# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>MARINER HEALTH CENTRAL, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-10877 (LSS)<br><br>(Jointly Administered) |
| MARINER HEALTH CENTRAL, INC., PARKVIEW HOLDING COMPANY GP, LLC, AND PARKVIEW OPERATING COMPANY, LP,<br><br>Plaintiffs.<br><br>v.<br><br>FILIMON ARZETA, JESSE GARRETT, JANET HORROBIN, JAMES MARTIN, TERESA MEADORS, CHRISTINE VASSIS, ALMA BUNCH, KYU CHUNG, SUSAN MYUNG WON, SOON CHOI HYO, YOUNG JUNG HYO, BRIAN BYUNG HWA CHUNG, MARIA CONTRERAS, SCOTT COOK, ALYSSA DOE, JEFF DOE, ANA MARIA FLORES, PAULA GREENE, DANA GREENE-COWARD, CARLENE HUFFMAN, KATHY HUNTER, TRACY JACKSON, AVIS DEWALT, DAVONTE BARFIELD, MARGO L., MELVIN LOFTON, AZHYA JONES, YVONNE LOFTON, SYLVIA LOFTON, PHILIP MANGANO, IRMA SUAREZ, SOPHIA SUAREZ, CHRISTOPHER PAUL TUCKER, JASON TUCKER, CASEY TUCKER, STEPHEN TUCKER, AND TEOLA WATSON,<br><br>Defendants. | Adv. Proc. No. 22-50418 (LSS) |

**DECLARATION OF KRISTY OWEN IN SUPPORT OF MOTION OF THE DEBTORS FOR AN ORDER EXTENDING THE AUTOMATIC STAY, OR IN THE ALTERNATIVE GRANTING INJUNCTIVE RELIEF, TO STAY PROSECUTION OF THE COVERED ACTIONS AGAINST NON-DEBTOR AFFILIATES**

---

[1] The Debtors, along with the last four digits of each Debtors' tax identification number, are Mariner Health Central, Inc. (6203), Parkview Holding Company GP, LLC (1536), and Parkview Operating Company, LP (7273). The Debtors' headquarters are located at 3060 Mercer University Drive, Suite 200, Atlanta, GA 30341.

I, Kristy Owen, declare as follows:

1. I am the Director of Legal Affairs of Mariner Health Central, Inc. ("**Mariner Central**"), one of the debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"). I have held this position for 6 years.

2. I submit this declaration (the "**Declaration**") in support of the *Motion of the Debtors for an Order Extending the Automatic Stay, or in the Alternative Granting Injunctive Relief, to Stay Prosecution of Certain Actions Against Non-Debtor Affiliates* (the "**Motion**"). Capitalized terms used but not defined herein have the meanings ascribed in the Motion.

3. All facts set forth in this Declaration are based on (a) my personal knowledge gained over years of experience as an employee of Mariner Central, and/or my review of the Debtors' books and records, relevant documents, and information provided by the Debtors or their representatives, (b) information provided to me by employees of Mariner Central working under my direction, (c) information provided to me by, or discussions with, the members of the Debtors' management team or their advisors, and/or (d) my opinion based upon my experience. I am authorized to submit this Declaration on behalf of the Debtors and, if called upon to testify, I could and would testify competently to the facts set forth herein.

**MARINER CENTRAL AND ITS SUPPORT SERVICES**

4. The Debtors are part of the Mariner Health Care group of healthcare services providers, consultants and holding companies, all of which are direct or indirect subsidiaries of non-Debtor Mariner Health Care, Inc. (collectively, the "**Mariner Companies**"). Certain of the Mariner Companies operate 20 skilled nursing facilities (the "**Mariner Facilities**").

5. Debtor Parkview Operating Company, LP ("**Parkview**") operates one such Mariner Facility, and Debtor Mariner Central provides certain support services to Parkview and to the other Mariner Companies that operate Mariner Facilities (collectively with Parkview, the "**Operators**").

In this manner, as is common in the skilled nursing care industry, the Mariner Companies are able to achieve operating efficiencies and economies of scale by centralizing certain services necessary for operating the Mariner Facilities.

6. Mariner Central provides its services to each Operator pursuant to an Administrative, Clinical and Operational Support Agreement (each, a "**Support Agreement**"). Each Support Agreement is substantially identical. Attached hereto as **Exhibit A** is a true and correct copy of the Support Agreement between Mariner Central and Almaden Operating Company, LP, one of the Operators and one of the defendants in the Covered Actions.

7. Under the Support Agreements, Mariner Central is responsible for various payroll and personnel services, including management of certain human resources programs relating to recruitment and retention, and training Operator employees. *See* Support Agreement ¶ 2.1, *id.* Exh. A(a). Mariner Central assists Operators in complying with clinical policies and procedures as well as with federal and state laws. *See* Support Agreement ¶ 2.1, *id.* Exh. A(m). Mariner Central also provides a wide range of supporting activities through operational support teams. *See* Support Agreement ¶ 2.1, *id.* Exh. A(n).

8. Mariner Central also provides in-house counsel services, and related legal and compliance support to the Operators. *See* Support Agreement ¶ 2.1, *id.* Exh. A(p). The Operators rely on Mariner Central to provide such services and do not have their own internal in-house legal functions or other internal capability to respond to discovery requests, oversee outside counsel or otherwise defend a lawsuit. Mariner Central delivers these services, and meets its own needs for such services, through an in-house legal department consisting of two attorneys, two paralegals, one legal assistant and one part-time employee (together, the "**Legal Group**"). The Legal Group is intimately involved with and addresses all aspects of any discovery and litigation involving the Operators, including but not limited to obtaining, overseeing and managing outside legal counsel

and responding to discovery requests as necessary. Mariner Central, through the Legal Group, also assists Operators with document retention policies, including compliance with privacy requirements, and coordinates offsite document storage as appropriate.

9. The Legal Group and its personnel will be central to the Debtors' restructuring efforts and path to confirmation of a plan of reorganization in these Chapter 11 Cases. For example, Darryl Ross, one of the attorneys of the Legal Group, tried portions of the Ledesma Action and is primarily responsible for the Ledesma Appeals,[2] the resolution of which is critical for the Debtors to successfully restructure. I am responsible for managing the Debtors' contracts and reconciling claims, and serve as the primary contact for our restructuring advisors in developing the Debtors' schedules and for documentation needs relating to these Chapter 11 Cases. In addition, the Legal Group is led by Devin Ehrlich, an officer of Mariner Central and an attorney who oversees the defense of various actions that are highly material to the Debtors, including but not limited to the Integra Action and the action brought by the People of the State of California,[3] as well as various professional liability, labor and employment-based actions. To date, Mr. Ehrlich has been instrumental in assuaging employee, union and vendor concerns in light of the Debtors' commencement of these Chapter 11 Cases and in assuring the Debtors' operational compliance within the parameters of the Bankruptcy Code and related first day relief. More broadly, the Legal Group plays a critical role in assuring the Operators, including Parkview, comply with the various laws and regulations that govern them, and will be critical to addressing the pending litigations in

---

[2] The Ledesma Appeals are described in the Perkins Declaration (parags. 26, 34) and in the Debtors' pending motion for relief from the automatic stay to pursue such appeals [Case No. 22-10877, Docket No. 16].

[3] *People of the State of California v. Mariner Health Care, Inc. et al.*, Case No. RG21-095881, Superior Court of the State of California, County of Alameda (Apr. 4, 2021) and *People of the State of California v. Mariner Health Care, Inc. et al.*, Case No. RG21-095881, Superior Court of the State of California, County of Alameda (Apr. 4, 2021), which actions are described further in the Perkins Declaration and are the subject of parallel proceedings (Adv. Proc. Nos. 22-50419, 22-50420).

3090574.1

connection with the Debtors' efforts to formulate a plan of reorganization that can be supported by various stakeholders.

## THE COVERED ACTIONS

10. The Covered Actions are pending lawsuits or arbitration proceedings, identified on Exhibit 1 to the Motion, brought against Mariner Central (and Parkview, in two instances), and against various non-debtor individuals or entities that are affiliated with the Debtors (collectively, the "**Non-Debtor Affiliates**"), (i) by or on behalf of current or former residents of Mariner Facilities asserting various damages, personal injury or wrongful death claims under statutory or tort theories of liability relating to alleged inadequate care, negligence, or other misconduct; or (ii) by current or former employees alleging wrongful termination and/or various wage violations or discrimination claims under applicable laws. Mariner Central and its co-defendants dispute the allegations in and are defending against each of the Covered Actions.

11. Each of the Covered Actions seeks to hold the Operator of the relevant Mariner Facility (Parkview or another Operator) liable for the alleged harm or wrongful conduct at that Mariner Facility, and to hold Mariner Central, as well as various other Non-Debtor Affiliates that are not Operators, liable for such alleged harm or wrongful conduct either directly or under assorted control person, aiding and abetting, and alter ego theories.

12. Attached hereto as **Exhibit B** is a true and correct copy of the complaint filed by a former resident in that certain Covered Action with case no. CV2200662. As shown in Exhibit B, that complaint alleges, among other things, that Mariner Central and the relevant Operator are "alter-egos of one another" and that Mariner Central "directed and participated in every aspect of the delivery of care" to that former resident. *See, e.g.,* Exh. B ¶¶ 11, 12, 15.

13. Attached hereto as **Exhibit C** is a true and correct copy of the complaint at issue in that certain Covered Action with case no. 22CV393351 filed by a former resident. As shown in

Exhibit C, that complaint alleges, among other things, that Mariner Central, together with the relevant Operator and other Non-Debtor Affiliates, had "joint control over the business operations of the skilled nursing facility" and were "knowing agents, joint venturers and/or alter-egos of one another." *See, e.g.,* Exh. C ¶ 11; *see also id.* ¶¶ 10, 12.

14. The Covered Actions, when brought by a current or former resident, generally allege wrongful conduct and/or inadequate staffing at the relevant Mariner Facility, with such conduct or violations allegedly controlled by Debtor Mariner Central, causing harm or damages to the respective Defendant. For example, claims related to a resident developing a wound, sustaining a fall with significant injury, or malnutrition and weight loss uniformly allege that Debtor Mariner Health Central controlled the amount of staff (nurses and nursing assistants) scheduled to work and would not authorize additional staff. *See, e.g.,* Exh. B ¶ 15 (alleging that Mariner Central "directed and participated in every aspect of the delivery of care" that former resident); Exh. C ¶ 10 (alleging liability for Mariner Central from among other things its "own direct conduct, acts and omissions").

15. Similarly, the Covered Actions, when brought by a current or former employee of one of the Mariner Companies to assert claims related to wage or employment practices, allege that Mariner Central was the employer for all or part of the period at issue or otherwise took or controlled the relevant actions or policies. For example, attached hereto as **Exhibit D** is a true and correct copy of the complaint, filed by a former employee of one of the Mariner Facilities, in that certain Covered Action with case no. CVPS2200407, alleging that "[Mariner Central] and [the Operator] rejected the doctor's note [plaintiff] presented . . . [Mariner Central] and [Operator] therefore unlawfully refused to accept the doctor's note and recommendations . . ." Exh. D. ¶ 26.

16. The Ledesma Action, which precipitated the commencement of these Chapter 11 Cases, illustrates how the allegations relating to any Mariner Facility carry potential exposure for

Mariner Central. Despite being based on various injuries and claims arising at the Parkview Facility, that action resulted in an award against Mariner Central and in an amount vastly exceeding the award against the actual Operator (approximately $8.9 million and $6 million, respectively). Each of the Covered Actions, whether arising from or relating to the Parkview Facility or another Mariner Facility, seeks to assert similar claims and theories of liability against Debtor Mariner Central and presents similar risks to its estate.

17. The similarities between the allegations of the Covered Actions and the attendant legal and factual questions expose the Debtors to significant estoppel, preclusion and evidentiary prejudice if any such matters are allowed to continue against the Non-Debtor Affiliates. For example, since the commencement of these Chapter 11 Cases, the plaintiffs in that Covered Action with case no. 22CV012984 have already cited and relied on deposition testimony by Mariner Central employees in the Ledesma Action in opposing certain relief requested by Non-Debtor Affiliates therein to support a theory of "supervisory liability" against Mariner Central and its employees. Attached hereto as **Exhibit E** is a true and correct of such opposition, and attached hereto as **Exhibit F** is a true and correct copy of a supporting declaration (without exhibits thereto due to size) by plaintiff's counsel seeking to introduce evidence from the Ledesma Action.[4] Such efforts demonstrate how interwoven the claims against Mariner Central are with claims against Non-Debtor Affiliates and how the Debtors will be prejudiced by allowing any Covered Action to go forward.

**MARINER CENTRAL WILL BEAR THE BURDEN OF THE COVERED ACTIONS**

18. The Covered Actions were commenced between April 2020 and July 2022. Each of the Covered Actions presently remains in the initial motion practice or early discovery stages.

---

[4] Those plaintiffs also requested that the state court order discovery from defendants including Mariner Central and order Mariner Central to produce employees for deposition. *See* Exh. E at 21. The Debtors reserve all of their rights with respect to this violation of the automatic stay.

19. The discovery for any Covered Action will be significant. In particular, claims brought under the California Elder Abuse Act routinely cause voluminous discovery to be served and responded to and/or motions for protection to be filed. Routine discovery demands run into the hundreds for document categories and interrogatories including wide-scale email searches. Upon completion of the initial written discovery phase, depositions numbering on average between 10-14 depositions per case of employees and former employees are undertaken which requires extensive witness preparation and the costly and time-intensive burden to respond would inevitably fall heavily on the Debtors' personnel. Further, because the Covered Actions deal with different Mariner Facilities, disparate injuries and damages claims, and varying groups of defendants, much of the discovery will not be broadly reusable across the Covered Actions, necessitating such burdens to be incurred again and again. Two of the Covered Actions (Case Nos. CVRI2103380, CVPS2104890) are class actions asserting wage and overtime claims that will require particularly broad discovery. The discovery burdens are heightened further by the allegations of alter ego/control liability of the Covered Actions, which require discovery significantly broader than a single employee's or patient's records.

20. Much of the information necessary to prosecute or defend the Integra Action claims, such as medical charts, billing statements, financial and administrative records or relevant emails, is within the possession or control of Mariner Central. In contrast, only some of the relevant information will be within the possession or control of the Operators. This includes information within the possession or control of Debtor Parkview, which will be responsive in light of the collective allegations of the Integra Action. Overall, the substantial majority of relevant information is likely to be within the possession or control of Mariner Central.

21. In addition to this document discovery from Mariner Central, many of the persons most knowledgeable regarding the allegations of the Covered Actions, particularly with respect to

the "alter ego" or "control" allegations, will be current or former employees of Mariner Central. Other current or former employees of Mariner Central will also have relevant information or knowledge regarding staffing practices, transfer/discharge notices, employment policies and other such issues pertinent to the allegations.

22. As noted above, the Operators rely on Mariner Central to provide in-house legal and compliance services and do not have the capability to respond to discovery requests, oversee outside counsel or otherwise manage a defense of legal actions or proceedings. Accordingly, the Operators rely on Mariner Central to manage and coordinate defense of the Covered Actions.

23. If the Covered Actions proceed, the costly and time-intensive burden to respond to discovery, oversee outside counsel and manage the defense of the Non-Debtor Affiliates would inevitably fall heavily on Mariner Central personnel. Such burdens will divert the Debtors' attention from and impair their ability to address issues relating to these Chapter 11 Cases, including but not limited to their ability to reconcile claims and deliver necessary reporting, to pursue the Ledesma Appeals, to work with employees, vendors and creditors dealing with the Chapter 11 Cases, and to assist with efforts to confirm a plan of reorganization.

## THE INDEMNIFICATION AND ADVANCEMENT OBLIGATIONS

24. Each Support Agreement obligates Mariner Central to indemnify and defend its counterparty Operator and such Operator's managers, employees, affiliates for any and all claims and losses incurred in connection with any breaches or failures by Mariner Central of its obligations, or any negligent act, willful omission or fraud by Mariner Central. *See* Support Agreement § 6.1. Because the Covered Actions assert claims against Mariner Central for actions or failures relating to its obligations or conduct under the Support Agreements, Mariner Central is obligated to indemnify and advance costs for the Operators on account of the Covered Actions.

25.     In addition, the Mariner Central certificate of incorporation and bylaws both provide for indemnification and advancement to all persons made party or otherwise involved in any action by reason of being a current and former director and officer of Mariner Central or its predecessors, or by reason of service as a director, officer, employee or agent of any other entity at the request of Mariner Central.  As certain Covered Actions expressly name Mariner Central officers or employees as defendants, such persons may also be entitled to indemnification and advancement by Mariner Central under its organizational documents.  For example, attached hereto as **Exhibit G** is a true and correct copy of the complaint filed by a resident in that certain Covered Action with case no. 22CV012984 naming one officer and four employees of Mariner Central as defendants.  Moreover, each Covered Action includes multiple unidentified defendants (*e.g.*, the Covered Action with case no. CVPS2202058 names "Does 1 – 250" as defendants), any of whom may ultimately be entitled to indemnification and advancement from Mariner Central under the Support Agreements, its organizational documents.

26.     The costs incurred by Mariner Central for external legal fees, expert fees and expenses in defense of claims such as the Covered Actions are significant but vary materially from year to year.  The costs of the Covered Actions are expected to significantly increase as the Covered Actions progress into discovery and through motion practice towards trials.  Any available insurance coverage for such costs has already been exhausted.

## REORGANIZATION

27.     While the Debtors lack the ability to satisfy all claims asserted against them in full after recent adverse litigation developments, with the benefit of the automatic stay and a breathing spell from litigation, the Debtors expect to formulate and pursue acceptance of a confirmable plan of reorganization that preserves operations, protects patients and has the requisite creditor support.

**RESERVATION**

28.     The Debtors understand that some Covered Actions plaintiffs may seek to avoid the automatic stay and the jurisdiction of this Court by dismissing Mariner Central, and/or Parkview if applicable, from such actions and the Debtors reserve all of their rights with respect thereto.  Any such dismissal would not alter the facts that Mariner Central would continue to bear the burden of discovery in and defending against such Covered Action, would continue to suffer from the diversion of key personnel from crucial restructuring efforts on account of such Covered Action, would continue to incur significant indemnification and advancement liabilities on account of such Covered Action, and could continue to face estoppel, preclusive or other prejudicial effect in future litigation from adverse findings in such Covered Action.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on: October 4, 2022

By: _____
Kristy Owen
Director of Legal Affairs
Mariner Health Central, Inc.