# EXHIBIT A

ADMINISTRATIVE, CLINICAL AND OPERATIONAL SUPPORT AGREEMENT

EFFECTIVE AS OF January 1, 2012

by and between

MARINER HEALTH CENTRAL, INC.
(CONTRACTOR)

and

ALMADEN OPERATING COMPANY LLC
(OPERATOR)

2065 Los Gatos-Almaden Road
San Jose, CA 95124

## **TABLE OF CONTENTS**

| | | |
|---|---|---|
| Article I: | Retention of Contractor | 1 |
| Article II: | Support Services | 1 |
| Article III: | Certain Responsibilities of Operator | 2 |
| Article IV: | Term and Termination | 3 |
| Article V: | Support Fee | 3 |
| Article VI: | Indemnification; Expenditure Limitation | 3 |
| Article VII: | Miscellaneous | 4 |

<u>EXHIBITS</u>

| | | |
|---|---|---|
| Exhibit A: | Services | 8 |
| Exhibit B: | Business Associate Agreement | 10 |

# ADMINISTRATIVE, CLINICAL AND OPERATIONAL SUPPORT AGREEMENT

THIS ADMINISTRATIVE, CLINICAL AND OPERATIONAL SUPPORT AGREEMENT (this "Agreement") is effective as of January 1, 2012, between MARINER HEALTH CENTRAL, INC, a Delaware corporation ("Contractor"), and ALMADEN OPERATING COMPANY LLC, a Delaware limited liability company (the "Operator").

## RECITALS

WHEREAS, the Operator operates and manages a 77 bed facility known as Almaden Health and Rehabilitation Center (the "Facility") that provides long-term and skilled nursing care and related services to patients and residents of various acuity levels (the "Business");

WHEREAS, Operator is the licensed operator of the Facility and all services provided by the Contractor are as an independent contractor to the Operator;

WHEREAS, the Operator desires to engage Contractor to provide and perform certain administrative, clinical and operational support services required in connection with the management of the Facility and the Business.

NOW, THEREFORE, in consideration of the foregoing, the mutual covenants set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

## ARTICLE I

## RETENTION OF CONTRACTOR

1.1 **Appointment.** The Operator appoints Contractor, and Contractor hereby accepts the appointment, subject at all times to the terms and provisions set forth herein, as the sole and exclusive entity acting for and on behalf of the Operator to perform the support services defined in Section 2.1.

1.2 **Authority.** Contractor is hereby expressly authorized to perform the services hereunder in whatever manner it deems reasonably appropriate, including subcontracting the performance of the services, to meet the day-to-day requirements of the operations of the Operator; provided, however, it shall comply with any reasonable and lawful policies or directives established from time to time by the Operator.

## ARTICLE II

## SUPPORT SERVICES

2.1     **Support Services.** Consistent with the provisions of this Agreement, subject to any reasonable and lawful directives or policies established by the Operator, Contractor shall, in consultation with the Operator, provide certain support services (the "Services") to the Operator, including, without limitation, the Services set forth on Exhibit A hereto.

2.2     **Bank Accounts.** Contractor shall, with and subject to the Operator's prior approval, open and maintain accounts and investments in such banks and other financial institutions as Contractor may from time to time select, with such balances therein (which may be interest bearing or non-interest bearing) as Contractor shall from time to time deem appropriate and shall deposit in such account(s) all receipts and monies specifically related to the Operator and received by Contractor on behalf of the Operator, and shall make disbursements from the accounts of and on behalf of the Operator and in such amounts and at such times as the same are required. Signatories and approvals as to the amounts on all checks shall be in accordance with mutually agreed requirements.

2.3     **Accounting Records.** Contractor shall establish and administer accounting procedures, controls and systems for the development, preparation and safekeeping of the Operator's records and books. Contractor shall maintain the books, records and accounts of the Operator in accordance with U.S. generally accepted accounting principles or as may be otherwise mutually agreed to by the Operator and Contractor. Contractor shall cooperate in all respects necessary to permit the Operator's auditors, if any, to audit the financial statements of the Operator for each fiscal year.

2.4     **Contracts.** For the administrative convenience of the Operator, and at Operator's request, the Contractor shall be authorized, on behalf of and as agent for the Operator, to enter into individual or group contracts benefiting the Operator, individually, or the Operator and other customers of Contractor. In all such cases, Contractor shall merely serve as contract administrator and agent of the Operator and does not assume any liability of the Operator relating to such contracts.

2.5     **Proprietary Marks.** Contractor hereby grants Operator a non-exclusive license to use the procedures and policy manuals and other proprietary materials in the possession of Contractor and generally made available for license to other customers of Contractor from time to time (the "Proprietary Materials") during the term of this Agreement. Upon termination of this Agreement, Operator agrees to promptly return or destroy at Contractor's request all Proprietary Materials in its possession.

ARTICLE III

CERTAIN RESPONSIBILITIES OF OPERATOR

3.1     **Employees of Operator.** Operator shall be the employer of all Facility employees ("Employees"). Operator shall be responsible for the hiring, firing, promotion, discharge and supervision of the Employees.

3.2     **Expenses.**  Operator shall pay all debts, expenses and costs associated with the operation of the Facility, including but not limited to the compensation of all Employees.

## ARTICLE IV

## TERM AND TERMINATION

4.1     **Term and Termination.** The initial term of this Agreement shall commence on January 1, 2012, the "Effective Date" and shall continue for a period of one (1) year (the "Initial Term"). After the Initial Term, this Agreement shall automatically renew for successive one year terms; provided that, following the Initial Term, this Agreement may be cancelled by either party hereto upon thirty (30) days prior written notice.

## ARTICLE V

## SUPPORT FEE

5.1     **Fees of Contractor.** As consideration of the Services rendered by Contractor pursuant to this Agreement, the Operator shall pay Contractor on a monthly basis five (5) percent of the net operating revenue of the Facility computed in accordance with GAAP.

## ARTICLE VI

## INDEMNIFICATION; EXPENDITURE LIMITATION

6.1     **Indemnification of Operator by Contractor.**  Contractor shall indemnify and hold Operator and Operator's officers, directors, equity holders, members, managers, employees and affiliates harmless from any and all claims, losses, judgments, damages, expenses and liabilities whatsoever (including reasonable attorneys' fees) incurred by any of them in connection with, by reason of, or arising out of: (a) the breach or failure of any obligation of Contractor that is contained in this Agreement or (b) any third party claims which are caused by Contractor in whole or in part through any negligent act, willful omission, fraud or self-dealing activities that involve terms and conditions that are not arms-length in connection with the performance of Contractor's duties or obligations under this Agreement.  Contractor's obligations under this Section 6.1 shall survive termination of this Agreement.

6.2     **Indemnification of Contractor by Operator.**  Operator shall indemnify and hold Contractor and Contractor's officers, directors, equity holders, employees and affiliates harmless from any and all claims, losses, judgments, damages, expenses and liabilities whatsoever (including reasonable attorneys' fees) incurred by any of them in connection with, by reason of, or arising out of: (a) Contractor's performance of services

or undertaking of responsibilities in compliance with the terms and conditions of this Agreement; (b) the breach or failure of any obligation of Operator that is contained in this Agreement; or (c) any damage to property, or injury or death to persons, occurring in or with respect to the Facility; excluding, however, for clauses (a), (b) and (c) any matters covered by Contractor's indemnity under Section 6.1 hereof. Operator's obligations under this Section 6.2 shall survive termination of this Agreement.

      6.3     **Control of Defense of Indemnifiable Claims.** The indemnified party shall promptly notify the indemnifying party of any such claim and shall provide the indemnifying party with all available evidence to enable the indemnifying party to defend such claim. Both parties shall engage in mutual cooperation and consultation through resolution of said claim. To the extent not covered by insurance, the indemnifying party shall be responsible for the expenses of the defense, including, without limitation, attorneys' fees and court costs. If necessary, the indemnified party shall join as a party to the suit, but shall be under no obligation to participate except to the extent that such participation is required as a result of being a named party to the suit. The indemnified party shall offer reasonable assistance to the indemnifying party in connection therewith at no charge to the indemnifying party except for reimbursement of reasonable out-of-pocket expenses incurred by the indemnified party in rendering such assistance. The indemnified party shall have the right to participate and be represented in any such suit by its own counsel at its own expense. The indemnifying party shall not settle any such suit if such settlement would have an adverse effect on the rights of the indemnified party without obtaining the prior written consent of the indemnified party, which consent shall not be unreasonably withheld. It is the intention of the parties that, in the event that the indemnifying party wrongfully denies its indemnification obligations hereunder, and the indemnified party is required to enforce the indemnifying party's obligation hereunder, then the indemnified party shall be entitled to recover its reasonable attorneys' fees and costs incurred therein.

      6.4     **Limitation of Expenditure Obligation.** Notwithstanding anything to the contrary in this Agreement, Contractor shall have no obligation whatsoever to make any advance to or for the account of Operator, or to pay any amount contemplated for, or required of, Contractor under this Agreement, or to incur any expenditure obligation – whether ordinary or capital – except to the extent that funds are available for such purpose (in Contractor's reasonable judgment) either from working capital or capital funds provided by Operator or otherwise from the facility funds.

ARTICLE VII

MISCELLANEOUS

      7.1     **No Personal Liability.** The parties hereto agree that the liabilities of Operator and Contractor under the terms of this Agreement shall be limited solely to the assets of the Operator and Contractor, it being intended that no officers, director(s) or equity holder(s) of Operator or officers, directors, equity holders of Contractor shall be deemed personally liable for any judgment, costs or damages incurred by Operator or

Contractor hereunder.

    7.2    **Governing Law.** This Agreement is made under, and shall be construed and enforced in accordance with, the laws of the State of California applicable to agreements made and to be performed solely therein, without giving effect to principles of conflicts of law.

    7.3    **Consultations and Disputes.** In the event of any dispute or difference arising out of or relating to this Agreement, the parties shall use their best efforts to settle such disputes or differences. To this effect, they shall consult and negotiate with each other, in good faith and understanding of their mutual interests, to reach a just and equitable solution satisfactory to the parties, for a period not to exceed ninety (90) days. Consultations shall commence when either party provides a written request for consultations to the other party.

    7.4    **Notices.** All notices, reports, requests, approvals, and other communications required or permitted under this Agreement related to professional or general liability claims must be in writing and will be deemed effective upon receipt at the e-mail or mailing address set forth below:

        If to Contractor:    c/o Mariner Health Care, Inc.
                                  One Ravinia Drive, Suite 1400
                                  Atlanta, GA 30346
                                  Attn: Devin Ehrlich, Esq.

        If to Operator:      Almaden Health and Rehabilitation Center
                                  2065 Los Gatos-Almaden Road
                                  San Jose, CA 95124
                                  Attn: Administrator

    7.6    **Merger.** This Agreement contains the entire understanding between the parties and supersedes all proposals, oral and written, all negotiations, conversations or discussions between or among the parties relating to the subject matter of this Agreement.

    7.7    **Amendments.** No amendment or modification to this Agreement shall be valid or binding upon the parties unless made in writing and executed by authorized representatives of both parties.

    7.8    **Severability.** Any terms or provisions of this Agreement which are found to be invalid or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such invalidity or unenforceability without rendering invalid or unenforceable the remaining terms and provisions of this Agreement or affecting the validity of enforceability of any of the terms or provisions of this Agreement in any other jurisdiction.

    7.9    **No Waiver.** The failure of either party to terminate, seek redress for a

breach of, or to insist on strict performance of any term, covenant, condition or provision contained in this Agreement shall not act as a waiver of rights or of the right to require future compliance and the term, covenant or provision in question shall remain in full force and effect.

  7.10 **No Partnership or Joint Venture.** Nothing contained in this Agreement shall constitute or be construed to be or create a partnership or joint venture between Contractor, its successors, or assigns, on the one part and the Operator, its successors, or assigns, on the other part. Notwithstanding the foregoing, the parties hereby agree that they shall each have a duty to act in good faith and to deal fairly with the other party hereto.

  7.11 **Counterparts.** This Agreement maybe executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

  7.12 **Headings.** The article and paragraph headings contained herein are for convenience of reference only and are not intended to define, limit, or describe the scope of intent of any provision of this Agreement. The Exhibits attached hereto form part of this Agreement.

  7.13 **Further Assurances.** At any time and from time to time during the term of this Agreement, at either party's request, each party shall promptly execute and deliver all such further agreements, certificates, instruments and documents, in a form reasonably satisfactory to both parties, stating that this Agreement is in effect with respect to, and is binding, and each party shall perform such further actions, as the other party may reasonably request in order to fully consummate the transactions contemplated by this Agreement and carry out the purposes and intent of this Agreement.

  7.14 **Assignment.** Neither this Agreement nor any rights or obligations under it may be assigned by any party without the other party's prior written consent. In the event of any permitted assignment, this Agreement will bind and inure to the benefit of the parties and their respective successors and permitted assigns.

  7.15 **Business Associate Addendum.** The Business Associate Addendum, attached hereto as <u>Exhibit B</u> shall be considered as part of this agreement.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the parties have caused this Administrative Support Agreement to be executed on their behalf by their duly authorized representatives, as of the day and year written above.

CONTRACTOR:
Mariner Health Central, Inc.

By: _____
Name:  Devin Ehrlich
Title:   Vice President

OPERATOR:
Almaden Operating Company LLC

By: _____
Name:  Devin Ehrlich
Title: Vice President

# EXHIBIT A

## Services

(a) Provide the following payroll and personnel services to the Operator: administration of Employee payroll matters; administration and design of Employee benefits programs; management of a human resources program relating to Employee recruiting and retention; training of Employees; advice on Employee relations and related issues; management and design of the Employee incentive and bonus plans and other compensation programs; and establishment and management of retirement plans.

(b) Provide or secure from third party contractors all necessary telephones, computers, faxes, communications, intranet, internet, computer services, software systems, and other central network services and systems.

(c) Provide bookkeeping, accounting and related administrative support, budgeting, forecasting, financial analysis and reporting and maintain separate books, records and accounts for the Operator reflecting its own revenues and expenses.

(d) Assist in securing insurance.

(e) Assist in connection with regulatory reporting and preparation of cost reports.

(f) Provide billing and collection services.

(g) Provide in-house legal counsel and related support, and assist in securing outside counsel as needed.

(h) Assist in obtaining and maintaining licensure and certification.

(i) Provide accounts payable services.

(j) Provide access to national contracts and other purchasing services.

(k) Provide advice regarding the Health Insurance Portability and Accountability Act.

(l) Assist in the preparation and filing of tax returns.

(m) Assist Operator in complying with Operator's clinical policies, procedures and guidelines, and federal and state law.

(n) Provide an operational support team.

(o) Provide interim leadership teams (i.e., interim Administrators and Directors of Nursing) for the operator when necessary. Individuals shall be appropriately licensed and shall act in an independent capacity when serving in an interim role.

(p) Pursuant to CFR Section 483.75(d), provide an individual who will serve as a member of the Operator's governing body. Individuals shall have the appropriate experience for the role and shall act in a capacity independent from his/her employment with Contractor.

(q) Provide such other services as shall be mutually agreed upon by the Operator and Contractor.

FIRST AMENDMENT
to
Agreement

This FIRST Amendment to the AGREEMENT ("**Amendment**") is made and entered into as of _October 12_, 2015 by and between Mariner Health Central, Inc. ("Mariner") and Almaden Operating Company, LP ("Facility") with reference to the following facts:

RECITALS

WHEREAS, the parties have previously entered into that certain AGREEMENT dated as of January 1, 2012 (the "**Agreement**").

WHEREAS, except as specifically amended by this Amendment, the Agreement shall continue in full force and effect.

NOW, THEREFORE, in consideration of the foregoing, the parties hereto agree that the Agreement is hereby modified as specified below:

The following shall be amended:

1. Almaden Operating Company, LLC is now called Almaden Operating Company, LP.

IN WITNESS WHEREOF, the parties hereto have executed this Amendment on the day and year first written above.

Mariner Health Central, Inc

Signature
By: Devin Ehrlich
Vice President of Mariner Health Central Inc.
Date: 10/9/15

Almaden Operating Company, LP

Signature
By: Linda W. Taetz
President
Date: 10/12/15

*Send a copy of Agreement to:*
Jenny Marie Abella
1338 20th Street
Santa Monica, CA 90404