# EXHIBIT C

E-FILED
1/13/2022 1:30 PM
Clerk of Court
Superior Court of CA,
County of Santa Clara
22CV393351
Reviewed By: R. Guevara

Jennifer Fiore, Esq. (SBN: 203618)
**FIORE ACHERMANN**
340 Pine St., Ste. 503
San Francisco, CA 94104-3237
Telephone & Facsimile: (415) 550-0650

Susan Y. Kang Gordon, Esq. (SBN: 273979)
**LAW OFFICE OF SUSAN KANG GORDON**
21C Orinda Way #162
Orinda, CA 94563
Telephone: (510) 400-6146
Facsimile: (510) 400-6148

Attorneys for Plaintiffs

# SUPERIOR COURT OF STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF SANTA CLARA

### (UNLIMITED JURISDICTION)

| | |
|---|---|
| SUSAN MYUNG WON, as Successor-in-Interest of KYU YE CHUNG and as Personal Representative of the ESTATE OF KYU YE CHUNG;<br>HYO SOON CHOI, as Successor-in-Interest of KYU YE CHUNG;<br>HYO YOUNG JUNG, as Successor-in-Interest of KYU YE CHUNG; and<br>BRIAN BYUNG HWA CHUNG, as Successor-in-Interest of KYU YE CHUNG,<br><br>Plaintiffs,<br><br>vs.<br><br>MARINER HEALTH CENTRAL, INC.;<br>SKYLINE SAN JOSE OPERATING COMPANY, LP, Individually and Doing Business as SKYLINE HEALTHCARE CENTER;<br>GC OPERATING COMPANY, LLC; and DOES 1 Through 100, Inclusive,<br><br>Defendants. | Case No.:  22CV393351<br><br>**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**<br><br>(1) Elder Abuse/Neglect (Pursuant to Welfare and Institutions Code § 15600, *et seq.*)<br>(2) Negligence<br>(3) Violation of Resident's Rights (Pursuant to Health & Safety Code § 1430(b)) |

1

Plaintiffs, based on information and belief and the investigation of counsel, except for information based on personal knowledge, hereby allege as follows:

**PARTIES**

1.      Decedent KYU YE CHUNG (hereinafter also "Ms. Chung") was an elder as defined by Welfare and Institutions Code ("WIC") § 15610.27 and a resident of Santa Clara County, State of California.  Ms. Chung died on January 14, 2021.

2.      Plaintiffs SUSAN MYUNG WON, HYO SOON CHOI, HYO YOUNG JUNG and BRIAN BYUNG HWA CHUNG (hereinafter collectively referred to as "Plaintiffs") are the surviving biological children of Ms. Chung. Plaintiffs bring this action as a survival action as her Successors-in-Interest and for SUSAN MYUNG WON as the Personal Representative of the KYU YE CHUNG, and is attaching as Exhibit 1 her declaration pursuant to C.C.P. § 377.32.  Said Plaintiffs seek punitive and exemplary damages on their survival causes of action, which are being brought pursuant to C.C.P. § 377.30, *et seq.*

3.      Defendant SKYLING SAN JOSE OPERATING COMPANY, LP, Individually and Doing Business as SKYLINE HEALTHCARE CENTER is the licensee of a skilled nursing facility located at 2063 Forest Avenue, San Jose, California, 95128 (hereinafter also referred to as the "FACILITY").  The FACILITY is a skilled nursing facility owned, licensed, operated, administered, managed, oversaw, directed, and/or controlled by Defendants within the County of Santa Clara, State of California.  The FACILITY is and has at all relevant times been governed by the state of federal laws and regulations regarding skilled nursing facilities.

4.      Plaintiffs are informed and believe that Defendants MARINER HEALTH CENTRAL, INC and GC OPERATING COMPANY (herein part of the "FACILITY DEFENDANTS") are registered to do business in the State of California and/or are conducting business in the State of California.  The FACILITY DEFENDANTS are and/or were the owners, operators, managers, administrators, supervisors, controllers, directors, officers, managing agents, management companies, parent companies and/or

1  sister companies of FACILITY who participated in, authorized, directed and/or controlled

2  the FACILITY, its resources and its respective agents, employees and/or independent

3  contractors, through, in part, employment, contract and/or agency, implementation of

4  policies and procedures, hiring, training and supervision at the FACILITY, and therefore

5  are liable for the acts and omissions of Co-Defendants, their agents, employees and/or

6  independent contractors as alleged herein.

7      5.      Plaintiffs are informed and believe that at all relevant times, Defendants

8  DOES 1 through 25, inclusive were the owners, operators, managers, administrators,

9  supervisors, controllers, directors, officers, managing agents, management companies,

10 parent companies and/or sister companies of the FACILITY DEFENDANTS, and these

11 entities and/or individuals each ratified, authorized and/or directed the conduct as herein

12 alleged at the FACILITY and/or of the FACILITY DEFENDANTS, and their respective

13 agents, employees, and/or contractors, and are, therefore, directly and/or vicariously

14 liable for the acts and omissions of these co-Defendants, agents, employees and/or

15 contractors.

16     6.      Plaintiffs are informed and believe and therefore allege that, at all relevant

17 times, DOES 26 through 50 were individuals and/or entities, and agents, employees

18 and/or independent contractors of the FACILITY DEFENDANTS, rendering and/or

19 controlling care and/or services to Ms. Chung, and whose conduct was a substantial

20 factor in causing the violation of rights, harm, injuries and damages alleged herein.  At all

21 relevant times hereto, the FACILITY DEFENDANTS had advance knowledge of the

22 unfitness of DOES 51 through 100 to perform their necessary duties and responsibilities,

23 yet engaged, employed and/or contracted with these individuals and/or entities with a

24 conscious disregard of the health, rights, and safety of Ms. Chung.

25     7.      Plaintiffs are informed and believes and therefore allege that, at all relevant

26 times, DOES 51 through 100, inclusive, were individuals and/or entities whose conduct

27 was substantial factor in causing the violation of rights, harm, injuries and damages

28 alleged herein.

8.    Plaintiffs are ignorant of the true names and capacities of those Defendants sued herein as DOES 1 through 100, and for that reason have sued those Defendants by such fictitious names.  Plaintiffs will seek leave from the Court to amend this Complaint to identify said Defendants when their identities and/or conduct are ascertained.

9.    FACILITY DEFENDANTS and DOES 1 through 100 are sometimes herein referred to as the "DEFENDANTS."

## FACILITY DEFENDANTS' LIABILITY

10.    The liability of the FACILITY DEFENDANTS for the abuse and neglect of Ms. Chung as alleged herein arises in part from their own direct conduct, acts and omissions, as well as for the conduct, acts and omissions of others all according to proof at the time of trial.

11.    In committing the wrongful conduct, acts and omissions as alleged herein, FACILITY DEFENDANTS:

(A)    Combined their property, skill, and/or knowledge with the intent to carry out a single business enterprise and undertaking of operating a 24-hour skilled nursing facility;

(B)    Had an ownership interest in the skilled nursing facility;

(C)    Had joint control over the business operations of the skilled nursing facility; and

(D)    Agreed to share the profits and losses of the business operations of the skilled nursing facility.

And thus, FACILITY DEFENDANTS acted as a "Joint Venture" with one another.

12.    FACILITY DEFENDANTS, by and through their officers, directors, and managing agents, presently unknown to Ms. Chung and according to proof at the time of trial, ratified the understaffing of the FACILITY, in both number and training, the relationship between understaffing and sub-standard provision of care to residents of the FACILITY, including Ms. Chung, the unfitness of licensed and unlicensed nursing

personnel employed at the FACILITY, the rash and truth of lawsuits against their skilled nursing facilities, including the FACILITY, and the customary practice of not adequately responding to and correcting deficiencies issued by the State of California's Department of Public Health.  Notwithstanding this knowledge, these officers, directors, and/or managing agents meaningfully disregarded these issues even though they knew they could, would, and did lead to unnecessary violation of rights, harm and injuries to the residents of the FACILITY, including Ms. Chung.

13.    Upon information and belief, it is alleged that the conduct, acts and omissions of the FACILITY DEFENDANTS, and each of them, which led to the violation of rights, harm and injuries to Ms. Chung as alleged herein, was the direct and proximate result of financial and control policies and practices dictated by and forced upon the FACILITY by and through the FACILITY DEFENDANTS' officers, directors, and managing agents and others presently unknown and according to proof at the time of trial.

14.    Upon information and belief, DOES 1 through 50, were members of and/or controlled the "Governing Body" of the FACILITY responsible for the creation and implementation of policies and procedures for the operation of the FACILITY and for supervising the administration of the FACILITY pursuant to Title 42 C.F.R. § 483.70. These members of the Governing Body were focused on increasing the earnings in the operation of FACILITY as opposed to providing legally mandated care to meet the individualized needs of each resident, including Ms. Chung.  The focus of these individuals on their own attainment of increased revenues and decreased costs contributed to the pattern of under-funding of the FACILITY, which led to the FACILITY violating state and federal rules, laws, and regulations and led to the violation of rights, harm and injuries to Ms. Chung as alleged herein.

15.    The FACILITY DEFENDANTS owned, licensed, operated, administered, oversaw, managed, directed, and/or controlled the FACILITY in such a way as to make their individual identities indistinguishable, and are therefore, the mere alter-egos of one

another.  The FACILITY DEFENDANTS are required pursuant to multiple transparency laws to identify individuals and companies who have any ownership interest in the FACILITY.  The FACILITY DEFENDANTS intentionally make determining ownership difficult in order to escape or avoid liability.

16.    According to the California Secretary of State, the FACILITY's mailing address is One Ravinia Drive, Suite 1400, Atlanta, GA, which is the same address of the FACILITY DEFENDANTS' offices.

17.    Plaintiffs are informed and believe, and thereon allege, the FACILITY DEFENDANTS and FACILITY share the same officers and directors, including as follows:

A.    Devin Ehrlich is the Vice President, Secretary and/or Officer of SKYLINE SAN JOSE OPERATING COMPANY, LP; and Sr. General Counsel, Executive Vice President, and Member of Board of Directors of MARINER HEALTH CENTRAL, INC.

B.    Kenneth Tabler is the President, Vice President and/or Member of Board of Directors of GC OPERATING COMPANY, LLC; President and Member of Board of Directors of MARINER HEALTH CENTRAL, INC;

C.    Linda Taetz is the President of SKYLINE SAN JOSE OPERATING COMPANY, LP; and Senior Vice President and Chief Compliance Officer of MARINER HEALTH CENTRAL, INC.

18.    The FACILITY DEFENDANTS were, therefore, the knowing agents, joint venturers and/or alter-egos of one another, and each of their officers, directors, and/or managing agents directed, approved and/or ratified all of the conduct, acts and omissions of each other, and their agents, employees and/or contractors, thereby making each of them directly and vicariously liable for the conduct, acts and omissions of their CO-DEFENDANTS and DEFENDANTS' agents, employees and contractors, as alleged herein.  Further, the FACILITY DEFENDANTS are liable as agents of one

another, and each of them, agreed, approved, authorized, ratified and/or conspired to commit all of the conduct, acts and omissions alleged herein.

19.     At all relevant times, the FACILITY DEFENDANTS, and each of their conduct, acts and omissions as alleged herein, were done in concert with one another in furtherance of their common design and agreement to accomplish a particular result, including decreasing costs and increasing revenues from the operation of the FACILITY by underfunding and understaffing the FACILITY with an insufficient number and quality of care personnel, many of whom were not properly trained and qualified to care for residents at the FACILITY.  The FACILITY DEFENDANTS knew that this would result in, and in fact did result in, causing violations of residents rights, harm, injuries and damages within their resident population, including Ms. Chung.  Further, the FACILITY DEFENDANTS aided and abetted each other in accomplishing the acts and omissions alleged herein.

20.     At all relevant times, the FACILITY DEFENDANTS owned, licensed, operated, administered, managed, oversaw, directed, and/or controlled all aspects of the operation and management of the FACILITY, including, but not limited to, budgeting, staffing, staff training, creating and implementing policies and procedures, accounts payable, accounts receivable, general accounting, cash management, pricing, reimbursement, capitalization and profit and loss margins.

21.     At all relevant times, the FACILITY DEFENDANTS, by and through their agents, employees, contractors, officers, directors, and/or managing agents directed, approved and/or ratified all of the conduct, acts and omissions of each other, and all conduct at or on behalf of the FACILITY.

## JURISDICTION AND VENUE

22.     Under C.C.P. § 410.10, this Court has jurisdiction over all causes of action asserted herein.  Plaintiffs' damages exceed the jurisdictional minimum of this Court.

23.     Plaintiffs are informed and believe and thereon allege, that the FACILITY DEFENDANTS are duly licensed to do business, and were and are doing business,

1    under and by virtue of the laws of the State of California.

2        24.    All DEFENDANTS are subject to the personal jurisdiction of this Court so

3    as to render the exercise of jurisdiction over it by the California courts consistent with

4    traditional notions of fair play and substantial justice because each Defendant has

5    sufficient contacts in California through the ownership, licensing, operation,

6    administration, management, overseeing, directing, and/or control of the FACILITY and

7    its resources, intentionally avails itself to the California market through participation in

8    skilled nursing facilities located in California, and derives substantial revenue from

9    California and other activities.

10        25.    Venue is proper in the County of Santa Clara based on the facts, without

11    limitation, that one or more DEFENDANTS resides in this County; and the events,

12    conduct, acts and omissions giving rise to Plaintiffs' claims arose in large part in this

13    County and nearly all Plaintiffs and Ms. Chung reside/resided in this County.

14        **<u>FACTS COMMON TO ALL ALLEGATIONS</u>**

15        26.    On or about November 26, 2019, Ms. Chung was admitted to the FACILITY

16    in order to receive skilled nursing care including, but not limited to, supervision, the

17    management and treatment of her mental and physical health conditions.

18        27.    At all times relevant hereto, the FACILITY provided 24-hour skilled nursing

19    services to and had care and custody of Ms. Chung and other elders and dependent

20    adults.  (See WIC §§ 15610.17 & 15610.57, subd. (a)(1).)  The FACILITY provided

21    services, including, but not limited to, administration of medications and nutrition, meals,

22    cleaning services, assistance with dressing, grooming, personal cleaning, and bathing,

23    and higher levels of personal care as needed and prescribed.  The FACILITY served a

24    range of elders and dependent adults, like Ms. Chung, who are in need of 24-hour skilled

25    nursing care, with histories of compression fractures, muscle weakness, infections, and

26    those under diabetes management for years.  DEFENDANTS marketed that their

27    business and operations would provide a suitable living option to members of the

28    community who had health conditions like Ms. Chung.

28.     Among the services that DEFENDANTS agreed to provide to their residents, they promised housing, meals, transportation, administration of medication, observations and consultations regarding a resident's health-related issues, assistance with activities of daily living, assistance with administration of medications, bathing assistance, dressing, grooming and toileting assistance, assistance with meals and activities and all other care services determined by law and contract.  Ms. Chung had some and/or all of these services at different times during her residency at the FACILITY.

29.     DEFENDANTS knew or should have known of Ms. Chung's medical conditions and her mental and physical abilities and limitations, including the need for communication in Korean.

30.     At all times, DEFENDANTS owed a duty to Ms. Chung, yet failed to own, license, operate, administer, manage, oversee, direct, and/or control the FACILITY and provide services in compliance with all applicable state regulations and codes and with accepted standards and principles that apply to those providing services in such a facility as required by Title 22 California Code of Regulations and the California Health & Safety Code.

### A.     Inadequate and Unqualified Staff

31.     Understaffing is one of the primary causes of inadequate care and unsafe conditions in skilled nursing facilities.  Numerous studies have shown a direct correlation between inadequate staffing and serious care problems including, but not limited to, a greater likelihood of incidents, falls, significant weight loss, and premature death.

32.     Title 22 C.C.R. §72527(a)(25), which incorporates by reference the rights enumerated in Cal. Health & Safety Code § 1599.1, mandates that the "facility shall employ an adequate number of qualified personnel to carry out all of the functions of the facility."

33.     The DEFENDANTS owed a duty to, and represented they would, provide services to Ms. Chung pursuant to 42 C.F.R. § 483.35 and 22 C.C.R. § 72329 to have sufficient number of personnel on duty at the facilities on a 24-hour basis to provide

appropriate custodial and nursing services to Ms. Chung in accordance with her resident care plans.  The DEFENDANTS did not provide these legally required services and failed to meet this duty to Ms. Chung, thereby violation her rights and causing harm and injuries to her.

34.    Nursing Staff, as referred to in Title 22 C.C.R. § 72311 and Title 42 C.F.R. § 483.30(c), is a vital part of providing resident care in a skilled nursing facility.  Nursing Care is provided by Registered Nurses, Licensed Vocational Nurses, and Certified Nursing Assistants.  Title 42 C.F.R. § 483.30(c) states that the skilled nursing facility must have sufficient nursing staff to provide nursing and related services to attain or maintain the highest practicable physical, mental and psychosocial well-being of each resident, as determined by resident assessments and individual plans of care.

35.    That as a direct result of the chronic understaffing at DEFENDANTS' facilities in both number and competency, DEFENDANTS failed to provide Ms. Chung with proper care as set forth herein.  Ms. Chung's rights were repeatedly violated and she suffered harm and injuries because the DEFENDANTS' staff did not have adequate time, inclination, or willingness to provide her with the required supervision and custodial care to prevent harm.  These injures were entirely preventable had there been sufficient staff on duty, in both number and competency.

36.    Accordingly, decisions by the DEFENDANTS as to staffing and census were made irrespective of resident population needs within the FACILITY, but rather, were determined by the financial and other needs of the DEFENDANTS.

37.    Upon information and belief, DEFENDANTS enacted, established, and implemented the financial plan and scheme which led to their facilities being understaffed, in both number and competency, by way of imposition of financial limitations on their facilities in matters such as, and without limiting the generality of the foregoing, the setting of financial budgets which clearly did not allow for sufficient resources and supervision to be provided to Ms. Chung.  These choices and decisions were, and are, at the express direction of the management personnel and others

1  presently unknown to Ms. Chung and according to proof at time of trial, having power to

2  bind the FACILITY as set forth in *McInerney v. United Railroads of San Francisco*,

3  (1920) 50 Cal.App.538, 549; *Bertero v. National General Corporation* (1974) 13 Cal.3d

4  43, 67.

5    38.    Minimum staffing of personnel at the FACILITY was dependent by law

6  upon the acuity (need) level of the residents of the FACILITY.  The FACILITY residents'

7  acuity level during the residency of Ms. Chung in the FACILITY was so high that the

8  required "minimum" staffing ratios exceeded the applicable numeric minimum

9  requirement of Cal. Health & Safety Code § 1276.5 pursuant to the provisions of Title 22

10  C.C.R. §§ 72515(b) & 72329, and 42 C.F.R. §482.35.  During the residency of Ms.

11  Chung in the FACILITY, the DEFENDANTS did not meet these minimum staffing

12  requirements based on its residents' acuity levels, including the acuity of Ms. Chung.

13    **B.    Lack of Supervision/Training**

14    39.    There is a high turnover of staff at the FACILITY.  For this and other

15  reasons, the nursing staff lacks the training and expertise necessary to care for residents

16  and meet their daily needs and activities of daily living.  Staff members regularly work

17  overtime or double shifts.  As a result, they are often tired, irritable, abusive, and prone to

18  making mistakes in caring for and overseeing residents.  They also do not communicate

19  well with one another when shifts change, thus failing to report changes in residents'

20  conditions and other crucial aspects of resident care and needs.

21    40.    The DEFENDANTS often move staff from one position to another to bump

22  up nursing staffing hours.  As a result, staff members do not know their job

23  responsibilities or how to adequately perform them.

24    **C.    Failure to Provide Proper Hygiene**

25    41.    Residents are not regularly bathed or provided proper dental, nail, and foot

26  care, including Ms. Chung.

27    42.    In accepting and utilizing tax payer dollars through Medicare and Medi-Cal

28  reimbursement in the provision of nursing home care and related services provided to

Ms. Chung and other residents, DEFENDANTS undertook duties and were obligated to, *inter alia*: (1) comply with the federal Nursing Home Reform Act of 1987, aka the Omnibus Budget Reconciliation Act of 1987; (2) adhere to Ms. Chung's residential rights as set forth in Health & Safety Code § 1430(b); (3) comply with Title 22 of the C.C.R.; and (4) provide basic care and services that meet the prevailing standard of care in the delivery of all skilled nursing care and services provided to Ms. Chung while he resided at the FACILITY.

### D.   Fraudulent Misrepresentations & Concealment

43.   DEFENDANTS represented to the public and to Ms. Chung and/or her family members, that DEFENDANTS were sufficiently staffed so as to be able to meet the basic needs of Ms. Chung, and that DEFENDANTS operated in compliance with all applicable rules, laws and regulations governing the operation of skilled nursing facilities in the State of California.  These representations were, and are, false and when DEFENDANTS made such representations, they knew them to be false.

44.   In the operation of DEFENDANTS' facilities, DEFENDANTS and each of them, held themselves out to the general public via websites, brochures, admission agreements and other mechanisms presently unknown to Plaintiffs, and according to proof at time of trial, to Ms. Chung and others similarly situated, that their skilled nursing facilities provided services that were in compliance with all applicable federal and state laws, rules and regulations governing the operation of a skilled nursing facility in the State of California.  In the operation of the FACILITY, the DEFENDANTS held themselves out to Ms. Chung and/or his family members that DEFENDANTS would be able to meet the needs of Ms. Chung.  These representations of the nature and quality of the nature of services to be provided were, in fact, false and when DEFENDANTS made such representations, they knew them to be false and/or should have known them to be false.

45.   At all relevant times, DEFENDANTS failed to reasonably hire, supervise and retain employees such as licensed vocational nurses, certified nursing assistants,

registered nurses, a Director of Nursing and Administrator, all of whom were properly and reasonably fit, qualified supervised and trained to provide services to Ms. Chung and meet her basic care needs.

46.     The injuries, harm and violation of resident rights suffered by Ms. Chung were the result of the illegal and reckless plan and effort of the DEFENDANTS, to cut costs in the operation of the FACILITY and in other ways as alleged, to usurp the sole legal responsibility of the planning and operation of the FACILITY, and thereby in the undertaking assumed all of the responsibilities of the FACILITY, including the duty of due care and compliance with all legal standards applicable to skilled nursing facilities.  In doing so, DEFENDANTS knew or should have known that their staff would be unable to comply with the standards for care set forth herein, and other legal standards, all at the expense of their residents, including Ms. Chung.  Integral to this plan was the practice and pattern of staffing, as described herein, with an insufficient number of and incompetent staff, many of whom were not properly trained or qualified to care for the elders and/or dependent adults, whose lives were entrusted to them.  The "understaffing" and "lack of training" plan was designed as a mechanism as to reduce labor costs and predictably and foreseeably resulted in the violations of rights and the abuse and neglect of many residents and most specifically, Ms. Chung.  The violation of rights, harm and injuries suffered by Ms. Chung were the direct and proximate result of improperly trained, supervised staff as well as inattentive staff.

**E.     Additional Allegations Regarding Abuse, Neglect, Negligence and Violation of Plaintiff's Rights**

47.     At all relevant times during her residency, DEFENDANTS failed to provide services to Ms. Chung, including, but not limited to, bathing, monitoring, personal cleaning, grooming, and other basic care services, as well as failing to communicate with her in her native language of Korean, which resulted in delayed assessments and treatments.  Staff created a language barrier and environment where miscommunication was inevitable.

48.    At all relevant times during her residency, DEFENDANTS knew Ms. Chung required regular supervision and monitoring.  DEFENDANTS failed to provide for Ms. Chung's health and safety and created an environment in which she was not safe both mentally and physically.  DEFENDANTS created and/or allowed an environment in which Ms. Chung was subjected to verbal abuse by other residents and staff, and was not allowed to participate in activities, including watching Korean television at times. DEFENDANTS moved her room several times and failed to keep the facility warm (often leaving windows and/or sliding glass doors open despite knowledge it was cold and request to close), which created an uninhabitable environment and caused her discomfort, increased confusion, behavioral disturbances, other harm and violation of her rights.

49.    At all relevant times during her residency, DEFENDANTS knew Ms. Chung was at risk of falling due to her cognitive decline with redirection difficulties, language barriers, balance issues, muscle atrophy, lower extremity weakness, among other medical conditions, and assessed her as a "high fall risk" at various times throughout her residency.  Despite their knowledge, Defendants failed to provide adequate supervision, therapies or safeguards to prevent Ms. Chung from suffering falls that were preventable. As a result, Ms. Chung suffered numerous falls and injuries at the FACILITY, of which Defendants were aware, including on or about June 6, 2020, July 5, 2020, August 12, 2020, November 2, 2020 and December 23, 2020.  In addition to suffering harm from living in fear of falling and her activities being limited and her quality of life being negatively impacted with each and every fall, Ms. Chung was caused to suffer physical injuries from falling, including a right hand fracture, a shoulder injury, aggravation of compound fractures, and contusions requiring diagnostic scans and other treatments.

50.    At all relevant times during her residency, DEFENDANTS knew that she was at risk for infections and that her medications needed to be properly managed for her mental and physical health conditions as there were potential side effects which made her further unable to look after her own needs.  While at the FACILITY, Ms. Chung

developed urinary tract infections due to DEFENDANTS' actions and/or inactions.

51.     At all relevant times during her residency, Ms. Chung did not get the rehabilitation, care or services she needed.  Instead, she was malnourished and dehydrated while in the care and custody of DEFENDANTS, who were responsible for meeting her dietary needs.  As a result, Ms. Chung deteriorated and was suffering from injuries and harm due to the failure of DEFENDANTS to provide for her nutritional, health, safety and well-being, and needed evaluation and treatment.

52.     As a direct and proximate result of the DEFENDANTS' conduct, acts and omissions alleged herein, DEFENDANTS' allowed Ms. Chung's rights to be violated and to suffer pain, indignity, humiliation and injury, which were entirely preventable had DEFENDANTS provided Ms. Chung with the level of care that the standard of care and the state and federal regulations required.

53.     In addition to any other direct and vicarious liability, DEFENDANTS ratified the mistreatment of Ms. Chung.  Knowing of the violation of rights, the harm, injuries and abuse and neglect, DEFENDANTS failed to terminate, discipline, reprimand, or otherwise repudiate the acts and omissions of any agent, employee or contractor due to or based upon the care, treatment, monitoring or supervision, or lack thereof, rendered to Ms. Chung.

## FIRST CAUSE OF ACTION

### For Elder & Dependent Adult Abuse & Neglect

### (WIC § 15600, *et seq.*)

### [*All Plaintiffs Against All DEFENDANTS*]

54.     Plaintiffs hereby reallege and incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

55.     While Ms. Chung was in DEFENDANTS' care and/or custody, DEFENDANTS and each of their employees, agents, and/or contractors committed neglect under WIC § 15610.57, which provides in relevant parts:

(a) "Neglect" means either of the following:

(1) The negligent failure of any person having the care or custody of an elder or a dependent adult to exercise that degree of care that a reasonable person in a like position would exercise.

(2) The negligent failure of an elder or dependent adult to exercise that degree of self care that a reasonable person in a like position would exercise.

(b) Neglect includes, but is not limited to, all of the following:

(1) Failure to assist in personal hygiene, or in the provision of food, clothing, or shelter.

(2) Failure to provide medical care for physical and mental health needs. . . .

(3) Failure to protect from health and safety hazards.

(4) Failure to prevent malnutrition or dehydration. . . .

(6) Failure of an elder or dependent adult to satisfy any of the needs above for themselves as a result of poor cognitive functioning, mental limitation, substance abuse, or chronic poor health.

56.    Pursuant to WIC § 15610.57(a)(1), DEFENDANTS in having the care and/or custody of Ms. Chung, committed neglect *inter alia* in negligently failing to exercise that degree of care that a reasonable person in a like position would exercise while Ms. Chung was in DEFENDANTS' care and/or custody.

57.    Pursuant to WIC § 15610.57(b)(1), DEFENDANTS in having the care and/or custody of Ms. Chung, committed neglect *inter alia* in negligently failing to assist in personal hygiene by failing to assist and/or supervise as set forth herein.

58.    Pursuant to WIC § 15610.52(b)(2), DEFENDANTS in having the care and/or custody of Ms. Chung, committed neglect *inter alia* in negligently failing to timely access needed emergency medical care and contact 911 for emergency medical services.

59.    Pursuant to WIC § 15610.57(b)(3), DEFENDANTS in having the care and/or custody of Ms. Chung, committed neglect *inter alia* in failing to protect her from health and safety hazards as set forth herein.

60. Pursuant to WIC §15610.57(b), which does not limit the definition of neglect, DEFENDANTS in having the care or custody of Ms. Chung, committed neglect *inter alia* in failing to have sufficiently trained, competent, and supervised staff and a sufficient level of staff.

61. While Ms. Chung was in the care and/or custody of DEFENDANTS, DEFENDANTS and each of their employees, agents, and/or contractors committed abuse under WIC § 15610.07 "Abuse," which provides in relevant parts:

"Abuse of an elder or a dependent adult" means either of the following:

(a) Physical abuse, neglect, financial abuse, abandonment, isolation, abduction, or other treatment with resulting physical harm or pain or mental suffering.

(b) The deprivation by a care custodian of goods or services that are necessary to avoid physical harm or mental suffering.

62. Pursuant to WIC § 15610.07(a), DEFENDANTS in having care and/or custody of Ms. Chung, committed abuse *inter alia* by neglecting to provide basic care services and assistance, and failing to protect Ms. Chung from health and safety hazards, despite knowing that she needed the services and assistance while in their care and/or custody and under their supervision.

63. Pursuant to WIC § 15610.07(b), DEFENDANTS in having care and/or custody of Ms. Chung, committed abuse *inter alia* by depriving her of necessary assistance and depriving her of goods or services, including timely and proper care and supervision. The aforementioned care and services were necessary to avoid physical harm or mental suffering. But such harm was caused by DEFENDANTS' conduct, acts and omissions, and was abuse as set forth herein.

64. "Abandonment," as it relates to elders, is defined at WIC § 15610.05, as the "desertion or willful forsaking of an elder or dependent adult by anyone having care or custody of that person under circumstances in which a reasonable person would continue to provide care and custody."

65.    The conduct, acts and omissions of DEFENDANTS, as alleged herein, constitute "abuse," "neglect," and "abandonment" of Ms. Chung.

66.    At all relevant times, DEFENDANTS knew that there was a high probability that, without proper care, training, planning, care planning, assessing, supervision, evaluation, implementation of policies and procedures, and reporting, Ms. Chung would suffer injury and harm.  Nonetheless, in conscious disregard of the high probability of injury to Ms. Chung, DEFENDANTS neglected and abused her.  DEFENDANTS failed to provide Ms. Chung with a safe place to live and necessary services, despite knowing that Ms. Chung required such services and was unable to provide them for herself. DEFENDANTS knew that Ms. Chung required basic care services and assistance, including timely and proper administration of safety checks, and failed to provide them for her.  They failed to protect Ms. Chung from health and safety hazards despite knowing that she was in need of them and would likely be injured without them.  And they failed to have a sufficient number of adequately trained staff to provide services to and supervision of Ms. Chung and other residents despite knowing that understaffing and lack of adequate training leads to injuries and death of residents.

67.    It was reasonably foreseeable that as a result of each of the DEFENDANTS' conduct, acts and omissions directly and/or indirectly toward Ms. Chung, Ms. Chung would suffer harm as a direct and proximate result of DEFENDANTS' actions and/or inactions.  As a direct and proximate result of DEFENDANTS' actions and/or inactions, Ms. Chung was caused to and did suffer extreme emotional and physical pain and suffering, physical injuries and trauma, and sustained economic and noneconomic damages.

68.    By engaging in the misconduct, neglect, abuse and abandonment, as alleged herein the DEFENDANTS' actions were reckless, malicious, oppressive, and/or fraudulent.

69.    An officer, director, or managing agent of each of the DEFENDANTS authorized, ratified, adopted and/or approved the conduct, acts and omissions set forth herein, and/or was personally responsible for the conduct, acts and omissions.

70.    As a legal and proximate result of the conduct, acts and omissions alleged

1  herein, Plaintiffs are entitled to an award of reasonable attorneys' fees pursuant to WIC §

2  15657(a).

3      71.    As a result of the recklessness, malice, oppression and/or fraud alleged

4  herein, Plaintiffs are entitled, in addition to special and general damages, to an award of

5  punitive damages pursuant to Civ. Code § 3294.

6      WHEREFORE, Plaintiffs pray for judgment against DEFENDANTS, and each of

7  them, as herein set forth.

8  ## SECOND CAUSE OF ACTION

9  ### For Negligence/Willful Misconduct

10  ### [All Plaintiffs Against All DEFENDANTS]

11      72.    Plaintiffs hereby reallege and incorporate by reference each and every

12  allegation contained in the preceding paragraphs of this Complaint as though fully set

13  forth herein and further allege as follows.

14      73.    At all relevant times, DEFENDANTS owed Ms. Chung a duty of care as an

15  elder resident, while in the custody and/or care of the DEFENDANTS, who were required to

16  protect her from health and safety hazards, including drowning while bathing. Such duties

17  included, but were not limited to, the duty to operate and manage the FACILITY in a careful

18  manner to protect the physical safety and well-being of the persons entrusted to their care

19  and/or custody, by exercising due care in hiring and staffing of managers and employees,

20  by properly training and supervising staff responsible for care and services provided to

21  residents, and by taking the necessary precautions required to maintain the safety of all

22  residents, including Ms. Chung.

23      74.    DEFENDANTS owed a special duty of care to Ms. Chung as a person of

24  dependency who was unable to care for herself independently during her admission at

25  the FACILITY.  DEFENDANTS affirmatively assumed responsibility for an elder with

26  numerous conditions and limitations, which included the duty to adequately care for and

27  supervise Ms. Chung, whose medical conditions left Ms. Chung particularly vulnerable to

28  harm.

75.     In addition to the codes and regulations set forth herein, DEFENDANTS, and each of them, owed a duty to Ms. Chung, yet failed to maintain or enhance Ms. Chung's quality of life, as required by 42 U.S.C. § 1396(b)(1)(A), 42 C.F.R. 483.15 and 22 C.C.R. § 72315(b).  In particular, DEFENDANTS consciously disregarded their duty to provide the level of care needed to meet the legal standards established for such care, thereby subjecting Ms. Chung to the probability of serious injury.  The DEFENDANTS failed to supervise Ms. Chung and deprived her with timely access to needed emergency medical care.  The DEFENDANTS violated Title 22, C.C.R. § 72311(a)(1)(A) and (C).

76.     Ms. Chung is a member of a group of persons the statutes and regulations are intended to protect.  DEFENDANTS, and each of them, had a duty under federal and state regulations, which are designed for the protection of persons like Ms. Chung, to provide for Ms. Chung's care, comfort, and safety.  Each of DEFENDANTS' conduct, acts and omissions violated the statutes and regulations set forth herein, and was the legal and proximate cause of Ms. Chung's harm and injuries.  Such conduct is, therefore, Negligent Per Se pursuant to Cal. Evid. Code § 669.

77.     At all relevant times, DEFENDANTS, and each of them, knew that their failure to provide care and services to Ms. Chung's needs within the standard of care (including the standard as expressed in federal and state statutes and regulations governing the FACILITY) would, given Ms. Chung's physical and mental condition coupled with the high degree of dependence upon the DEFENDANTS, pose the probability that Ms. Chung would sustain serious physical and mental injuries.

78.     Notwithstanding the aforesaid knowledge, DEFENDANTS, and each of them, consciously disregarded their duty to provide the degree of care sufficient to meet legal standards established for such care and services, and failed to provide such care and services, thereby subjecting Ms. Chung to the probability of serious injury.  In particular, and without limiting the generality of the foregoing, said DEFENDANTS failed to provide adequate monitoring, assessment and re-assessment of Plaintiff's physical and mental conditions to ensure that she received proper care, services and supervision,

and adequately train and supervise nursing staff in performance of basic custodial care; and maintain adequate nursing staff and support nursing staffing in the statutorily required ratios to meet the needs of Ms. Chung.

79.    The DEFENDANTS, and each of them, knew that Ms. Chung was a vulnerable elder and willfully caused Ms. Chung to suffer unjustifiable physical pain and mental suffering by subjecting Ms. Chung to circumstances and conditions likely to produce bodily harm and resulting injuries.

80.    In committing the wrongful and neglectful acts and omissions alleged herein, each DEFENDANT breached the foregoing duties to Ms. Chung.  These breaches were intentional and in reckless disregard of the probability that injury would result.  DEFENDANTS, and each of them, knew that there was a high probability that injury would result from the failure to adhere to such duties.

81.    At all relevant times, DEFENDANTS knew of the need for these regulations and laws, knew that the lives and health of their residents were at risk whenever they failed to meet such duties, and knew that the failure to comply with such duties would result in injuries to their residents, including Ms. Chung.  In breaching these duties, DEFENDANTS, and each of them, acted intentionally as evidenced by the conscious failure to eliminate known risks to Ms. Chung's health and safety stemming from their scheme of keeping resident care and service expenses at inadequate levels to increase the profits of their largely publicly-funded business operations.

82.    As a direct and proximate result of each DEFENDANTS' conduct, acts and omissions, Ms. Chung sustained harm and incurred injuries and noneconomic and economic damages in an amount to be proven at trial.  DEFENDANTS' conduct, acts and omissions were a substantial factor in causing harm to Ms. Chung.

83.    In doing the acts and omitting to act as alleged herein, Defendants acted so wantonly, recklessly, maliciously, oppressively, and/or fraudulently, and said conduct, acts and/or omissions were carried on by said DEFENDANTS with a willful and conscious disregard of the rights or safety of Ms. Chung, subjecting her to unjust

1 hardship in conscious disregard of her rights.

2 84. An officer, director and/or managing agent of DEFENDANTS, and each of

3 them, authorized the employees, agents and/or contractors' wrongful conduct and/or

4 adopted, approved and/or ratified the conduct after it occurred. DEFENDANTS had

5 advance knowledge of the unfitness of their employees, agents and/or contractors and

6 employed them, engaged and/or contracted with them, with a conscious disregard of the

7 rights or safety of others or authorized, adopted, approved and/or ratified the wrongful

8 conduct and/or were personally guilty of malice, oppression and/or fraud. The advance

9 knowledge and conscious disregard, authorization, adoption, approval and/or ratification

10 or act of malice, oppression and fraud was on the part of one or more of DEFENDANTS'

11 officers, directors or managing agents.

12 85. Said DEFENDANTS are, therefore, liable to Plaintiffs for punitive damages.

13 Plaintiffs, therefore, hereby request such damages against DEFENDANTS pursuant to

14 Civ. Code § 3294.

15 WHEREFORE, Plaintiffs pray for judgment against DEFENDANTS, and each of

16 them, as herein set forth.

17 **THIRD CAUSE OF ACTION**

18 **For Violation of Residents' Rights Under Cal. Health & Safety Code § 1430(b)**

19 **[All Plaintiffs Against Defendant SKYLINE SAN JOSE OPERATING COMPANY, LP**

20 **and DOES 1 Through 100]**

21 86. Plaintiffs hereby reallege and incorporate by reference each and every

22 allegation contained in the preceding paragraphs of this Complaint as though fully set

23 forth herein and further allege as follows.

24 87. Health & Safety Code § 1430(b) provides that "a current or former resident

25 or patient of a skilled nursing facility as defined in subdivision (c) of section 1250 . . . may

26 bring a civil action against the licensee of a facility who violates any rights of the resident

27 or patient as set forth in the Patients' Bill of Rights in Section 72527 of Title 22 of the

28 California Code of Regulations [which incorporates Health and Safety Code §1599.1], or

any other right provided for by federal or state law or regulation."

88.     At all relevant times, the licensee of the FACILITY was SKYLINE SAN JOSE OPERATING COMPANY, LP.

89.     For the reasons set forth herein and incorporated by reference, and for further reasons as will be presented at trial the licensee repeatedly and numerously failed to treat Ms. Chung with respect, consideration, and full recognition of dignity in care of her personal needs as required by the Residents' Bill of Rights and other rights provided by federal or state law or regulation.  The licensee repeatedly and numerously violated these rights of Ms. Chung, including, but not limited to:

> A.     22 C.C.R. § 72527(a)(12), which mandates that a resident shall be treated with consideration, respect and full recognition of dignity and individuality, including privacy in treatment and in care of personal needs;
>
> B..    22 C.C.R. § 72527(a)(25), which incorporates by reference the rights enumerated in Health & Safety Code §1599.1(a), which mandates that the "facility shall employ an adequate number of qualified personnel to carry out all of the functions of the facility."
>
> C.     22 C.C.R. § 72527(a)(25), which incorporates by reference the rights enumerated in Health & Safety Code § 1599.1(b), which mandates that "each resident shall show evidence of good personal hygiene, and be given care to prevent bedsores.";
>
> D.     22 C.C.R. § 72517, which mandates that a skilled nursing facility, such as the FACILITY, have an ongoing education program planned and conducted for the development and improvement of necessary skills and knowledge for all personnel which shall include: the prevention and control of infections, accident prevention and safety measures, and preservation of resident dignity;
>
> E.     42 C.F.R. § 483.24, which mandates that a skilled nursing facility, such as the FACILITY, must provide the necessary care and services to

attain or maintain the highest practicable physical, mental, and psychosocial well-being, in accordance with the comprehensive assessment and plan of care;

F.    42 C.F.R. § 483.10(g)(14), stating that residents have the right to have all significant changes of condition reported to them, their families, and their physicians immediately;

G.    Under Health & Safety Code § 1599.l(c), "[t]he facility shall provide food of the quality and quantity to meet the patients' needs in accordance with physicians' orders.";

H.    Pursuant to Health & Safety Code § 1599.l(e), "[t]he facility shall be clean, sanitary, and in good repair at all times.";

I.    Under 22 CCR § 72527(a)(4) residents have the right "[t]o consent to or to refuse any treatment or procedure...."; and under 22 CCR § 7252(a)(5) residents have the right "[t]o receive all information that is material to an individual patient's decision concerning whether to accept or refuse any proposed treatment or procedure.";

J.    Under 22 CCR § 72527(a)(7), residents have the right "[t]o be encouraged and assisted throughout the period of stay to exercise rights as a patient and as a citizen, and to this end to voice grievances and recommend changes in policies and services to facility staff and/or outside representatives of the patient' choice, free from restraint, interference, coercion, discrimination or reprisal."

K.    Under 22 CCR § 72527(8), residents have the right "[t]o be free from discrimination based on sex, race, color, religion, ancestry, national origin, sexual orientation, disability, medical condition, marital status, or registered domestic partner status.";

L.    Under 22 CCR § 72527(10), residents have the right "[t]o be free from mental and physical abuse."; and

M.    Under 22 CCR § 72527(12), residents have the "[t]o be treated with consideration, respect and full recognition of dignity and individuality, including privacy in treatment and in care of personal needs."

90.    One of the purposes of Health & Safety Code § 1430(b) is to protect against the type of harm that Ms. Chung suffered.  Ms. Chung is a member of a group of persons that Health & Safety Code §1430(b) is intended to protect.

91.    Among other remedies, Health & Safety Code § 1430(b) authorizes the recovery of damages of $500.00 per violation, injunctive relief, punitive damages, and mandatory attorneys' fees and costs.  These remedies are cumulative to any other remedies provided by law.

92.    Health & Safety Code § 1430(b) provides that DEFENDANTS "may be enjoined from permitting the violation to continue."  DEFENDANTS have acted and continue to act in violation of the aforementioned basic rights of their residents. DEFENDANTS' residents will continue to suffer injuries as a result of these violations unless the Court takes injunctive action.  Therefore, Plaintiffs request injunctive relief, including requiring DEFENDANTS to draft policies and procedures relating to their violations of Ms. Chung's rights; annual in-service training of DEFENDANTS' staff on the subjects of the violations; a third-party monitor to be paid at DEFENDANTS' expense to review policies and procedures, to perform annual audits to ensure the proper enforcement of these policies and procedures related to the safety of residents, and any other relief necessary to enjoin the conduct of DEFENDANTS.

WHEREFORE, Plaintiffs pray for judgment against DEFENDANTS, and each of them, as herein set forth.

## PRAYER

WHEREFORE, Plaintiffs pray for judgment against DEFENDANTS, and each of them, as follows:

A.    For injunctive relief prohibiting DEFENDANTS' violations of the Health & Safety Code section 1430(b) in the future;

B.      For a Court order requiring that DEFENDANTS immediately cease acts that constitute unlawful, unfair, and fraudulent business practices, as alleged herein, and to enjoin DEFENDANTS from continuing to engage in any such acts or practices in the future;

C.      For general damages according to proof, including Decedent's predeath pain and suffering;

D.      For special damages according to proof, including emergency medical services, funeral and burial expenses;

E.      For attorneys' fees and costs pursuant to WIC § 15657(a) and Health & Safety Code & 1430(b) (First and Third Causes of Action);

F.      For exemplary and punitive damages pursuant to Civ. Code § 3294;

G.      For prejudgment interest on those damages attributable to an ascertainable economic value, in accordance with Civil Code §§ 3288 & 3291;

H.      For costs of suit; and

I.      For such other and further relief as the Court deems just and proper.

## **JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury.

Dated:  January 13, 2022          FIORE ACHERMANN and THE LAW OFFICE OF
                                                        SUSAN KANG GORDON


By:  _____
        JENNIFER FIORE, ESQ.
        *Attorneys for Plaintiffs*