# EXHIBIT E

**Edward P. Dudensing (Bar No. 182221)**
**Jay P. Renneisen (Bar No. 173531)**
**Thomas A. Reyda (Bar No. 312632)**
*Dudensing Law*
1610 R Street, Suite 220
Sacramento, CA 95811
Telephone:  (916) 448-6400
Facsimile:  (916) 448-6401

Attorney for Plaintiffs

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF ALAMEDA

| | |
|---|---|
| ALYSSA DOE and JEFF DOE,<br><br>        Plaintiffs,<br><br>    vs.<br><br>SAN RAFAEL OPERATING COMPANY LP dba PINE RIDGE CARE CENTER; NATIONAL SENIOR CARE, INC.; MARINER HEALTH CARE, INC.; MARINER HEALTH CENTRAL, INC.; MARINER HEALTH CARE MANAGEMENT COMPANY; MHC HOLDING COMPANY; MHC WEST HOLDING COMPANY; GRANCARE, LLC; SAN RAFAEL OPERATING COMPANY GP LLC; LINDA TAETZ; DENNIS SARCAUGA; ROWENA BEDUYA; THOMAS DURR; ANTON GENABE; and DOES 1 through 50, inclusive,<br><br>        Defendants. | Case No.  22CV012984<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE AND STAY PROCEEDINGS PENDING TRANSFER**<br><br>Date:    October 4, 2022<br>Time:    3:00 p.m.<br>Dept.:  23<br>Judge:  Hon. Brad Seligman<br>Reservation ID: 245437723333<br><br>Action filed: June 16, 2022<br>*Trial Date:  Not Set* |

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................ 5

II.    FACTUAL AND PROCEDURAL BACKGROUND ............................... 6

     A.     ALLEGATIONS IN THE COMPLAINT RELEVANT TO VENUE ................. 6

     B.     DEFENDANT'S MOTION TO TRANSFER VENUE AND EFFORTS AT
VENUE RELATED DISCOVERY ................................................................ 8

III.   ARGUMENT ................................................................................ 9

     A.     DEFENDANT HAS THE BURDEN TO PROVE VENUE IN
ALAMEDA COUNTY IS IMPROPER .......................................................... 9

     B.     DEFENDANT'S ARGUMENT THAT VENUE MUST BE TRANSFERRED
UNDER CCP § 395(A) BECAUSE THE ADMISSION AGREEMENT WAS SIGNED
AND THE UNDERLYING SEXUAL ASSAULTS OCCURRED IN
MARIN COUNTY IS MERITLESS ............................................................. 10

     C.     DEFENDANT'S MOTION MUST BE DENIED AS A MATTER OF LAW
BECAUSE IT HAS ENTIRELY FAILED TO MAKE ANY SHOWING TO
NEGATE VENUE BASED ON THE RESIDENCIES OF
DEFENDANTS DURR AND GENABE .......................................................... 10

     D.     DEFENDANT'S MOTION SHOULD BE DENIED BECAUSE PLAINTIFFS
OBVIOUSLY NAMED BEDUYA, DURR AND GENABE IN GOOD FAITH ........... 12

     E.     DEFENDANT'S MOTION SHOULD BE DENIED BECAUSE
BEDUYA, DURR AND GENABE ARE PROPERLY NAMED
DEFENDANTS IN THIS ACTION ............................................................... 14

     F.     DEFENDANT'S MOTION TO TRANSFER VENUE
UNDER CCP § 397(C) IS UTTERLY MERITLESS ...................................... 18

     G.     IF THE COURT IS IN ANY WAY DOUBTFUL ABOUT DENYING
DEFENDANT'S MOTION, IT SHOULD ORDER DEFENDANTS
TO PRODUCE THE OUTSTANDING VENUE DISCOVERY
AND DEFENDANTS BEDUYA, DURR AND GENABE FOR DEPOSITION ............ 21

     H.     SANCTIONS ARE WARRANTED AGAINST DEFENDANT ........................ 20

IV.    CONCLUSION ............................................................................. 21

# TABLE OF AUTHORITIES

<u>CASES</u>

*Black Diamond Asphalt, Inc. v. Superior Ct.*, 109 Cal. App. 4th 166, 170 (2003) ------------------------------------- 12

*Buerkle v. Superior Court of Los Angeles County*, 59 Cal.2d 370, 371 (1963) ---------------------------------- 13

*Buran Equip. Co. v. Superior Ct.*, 190 Cal. App. 3d 1662, 1667 (1987) ------------------------------------- 22

*California Collection Agency v. Fontana*, 61 Cal.App.2d 648, 653 (1943) ---------------------------------- 16

*City of Los Angeles v. Pac. Tel. & Tel. Co.*, 164 Cal. App. 2d 253, 260 (1958) ---------------------------- 12

*Dwyer v. Lanan & Snow Lumber Co.*, 141 Cal. App. 2d 838, 841(1956) ---------------------------------- 21

*Fontaine v. Superior Ct.*, 175 Cal. App. 4th 830, 836 (2009) ------------------------------------------------ 12

*Freeman v. Dowling*, (1933) 219 Cal. 213, 216 (1933) ------------------------------------------------------ 16

*Gottesfeld v. Richmond Ice Cream* ------------------------------------------------------------------------- 14

*Greenleaf v. Jacks*, 133 Cal. 506, 507 (1901) ----------------------------------------------------------------- 12

*Gutierrez v. Superior Court, City and County of San Francisco*, 243 Cal.App.2d 710, 726 (1966) ------------------ 16

*Hamilton v. Superior Ct.*, 37 Cal. App. 3d 418, 424 (1974) ------------------------------------------------- 22

*Hearne v. De Young*, 111 Cal. 373, 376 (1896) -------------------------------------------------------------- 11

*In Frances T. v. Village Green Owners Assoc.*, 42 Cal. 3d 490, 508 (1986) --------------------------------- 20

*Jay v. Mahaffey*, 218 Cal.App.4th 1522, 1537-1538 (2013) ----------------------------------------------- 13

*Juneau v. Juneau*, 45 Cal. App. 2d 14, 16 (1941) ---------------------------------------------------------- 22

*Mission Imports, Inc. v. Superior Court of San Francisco (Monterey Bay Co.)*, 31 Cal.3d 921, 928 (1982) ------------ 11

*Mitchell v. Superior Court*, 186 Cal.App.3d 1040, 1046 (1986) --------------------------------------------- 11

*Richfield Hotel Mgmt., Inc. v. Superior Ct.*, 22 Cal. App. 4th 222, 224 & 227 (1994) --------------------------- 23

*San Diego Watercrafts v. Wells Fargo Bank*, 102 Cal. App. 4th 308, 316 (2002) --------------------------- 13

*Stute v. Burinda*, 123 Cal. App. 3d Supp. 11, 15 (1981) --------------------------------------------------- 13

*Stute v. Burinda*, 123 Cal. App. 3d. Supp. 11, 17 (1981) -------------------------------------------------- 22

*Tutor-Saliba-Perini Joint Venture v. Superior Ct.*, 233 Cal. App. 3d 736, 744 (1991) ------------------------- 22

*Ward Mfg. Co. v. Miley*,  131 Cal.App.2d 603, 606-607 (1955) -------------------------------------------- 11

*White v. Kaiser-Frazer Corp.,* 100 Cal. App. 2d 754, 758 (1950) ----------------------------------------- 12

*Williams v. Superior Ct. for Cnty. of Contra Costa*, 71 Cal. App. 5th 101, 109 (2021)-------------------------------- 11

*Wyatt v. Union Mortgage Co.*, 24 Cal.3d 773, 785 (1979) --------------------------------------------------------- 20

## STATUTES

CCP § 2025.250(b) --------------------------------------------------------------------------------------- 23

CCP § 396b(b) -------------------------------------------------------------------------------------------- 24

CCP section 128.7 ---------------------------------------------------------------------------------------- 24

CCP section 395(a) --------------------------------------------------------------------------------------- 11

CCP section 396b(b) -------------------------------------------------------------------------------------- 23

CCP section 397 ------------------------------------------------------------------------------------------ 23

CCP section 397(c) -------------------------------------------------------------------------------------22, 24

CCP section 399(a) --------------------------------------------------------------------------------------- 23

## TREATISES

*Balisok*, Elder Abuse Litigation § 9:79-80 (The Rutter Group 2022) ------------------------------------------- 20

*Weil & Brown*, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2022) -------------16, 22

## I.    INTRODUCTION

Before the Court is a motion by defendant San Rafael Operating Company LP dba Pine Ridge Care Center ("Pine Ridge") in this nursing home abuse and neglect case to transfer venue to Marin County. Defendant claims transfer is required because Alameda County resident defendants Rowena Beduya, Thomas Durr and Anton Genabe are not properly named and in fact are "sham" defendants.

As detailed below, defendant's motion should be resoundingly denied and sanctions should issue against defendant for bringing this frivolous motion.

First, defendant has made no evidentiary showing whatsoever as to defendants Durr or Genabe, which renders its motion meritless as a matter of law.

Second, based on the allegations in the Complaint, and the evidence presented by plaintiffs, the motion must be denied because plaintiffs had reasonable grounds for a good faith belief that causes of action exist against Beduya, Durr and Genobe.  Under California Supreme Court precedent, this negates any claim that they are "sham" defendants.

Third, in addition no showing of bad faith, Ms. Beduya and the other individual defendants are in fact proper defendants in this case.  Under California Supreme Court precedent, "[i]f the allegations in question did no more than shadow forth the semblance of a cause of action, they would be proof against assault upon the ground they were sham and frivolous." *McClung v. Watt*, 190 Cal. 155, 160-161 (1922). Plaintiffs more than meet that standard.  Moreover, in response to a motion to transfer venue under CCP section 395, the case law is clear the Court generally should not adjudicate disputed issues of fact regarding liability.  Nevertheless, even if it were to review the facts beyond the Complaint, plaintiffs have presented a mountain of evidence that Ms. Beduya, as the VP of Clinical Operations, was in fact overseeing and had responsibility for the clinical care at Pine Ridge, including in the area of staffing and with respect to training and policies and procedures to prevent and respond to incidents of sexual abuse.  These types of failures are at the heart of this case concerning the sexual assaults of plaintiff Alyssa Doe.  Given the evidence, it is clear that defendant cannot meet its burden on this motion.

Finally, defendant's request to transfer based on alleged witness inconvenience is completely unfounded.  Defendant has produced no evidence and the facility is only twenty-five (25) miles away from this Court.  Accordingly, defendant's motion should be denied and monetary sanctions should issue against it pursuant to CCP section 396b(b) in the amount of $ 7,250 as requested in the Renneisen Declaration.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Allegations In The Complaint Relevant To Venue

As stated in the Complaint, plaintiffs allege defendants operated Pine Ridge in a manner that led to the sexual assault and rape of plaintiff Alyssa Doe ("Alyssa") by an employee of the facility.  *See* Dec. Of Jay P. Renneisen In Support Of Plts' Opp ("Renneisen Decl."), ¶ 2 & Ex. A (Complaint) ¶¶ 36-40.  Plaintiff Alyssa was admitted to defendant's facility after suffering a traumatic brain injury in a tragic car accident and was so severely impaired that she was incapable of giving informed consent to sexual conduct, and she lacked the ability to protect herself against improper sexual conduct by others.  *Id.* ¶ 30-34.  Nevertheless, it was discovered in November 2021 that she was many months pregnant and that she had been sexually assaulted as many as 20 times at the facility.  *Id.* ¶¶ 38 & 41.

A root cause of the neglect of Alyssa was the knowing understaffing of the facility by defendants, including the individual defendants.  *Id.* ¶ 58.  Another root cause was their long pattern of failing to properly investigate complaints of sexual abuse and harassment in Mariner facilities, failing to properly train staff regarding sexual abuse, failing to create and implement necessary policies and procedures to prevent such abuse, and fostering a culture where such abuse was tolerated and/or ignored both at the facility and corporate levels.  *Id.* ¶¶ 47 & 61.  Basically, defendants have had a many year history of sweeping such incidents under the rug and the result is what happened to Alyssa.  *Id.* ¶¶ 36, 47 & 61.

To add insult to injury, defendants' practice of ignoring incidents of sexual assault led to a cover-up of the rape and pregnancy of Alyssa for many months where she did not receive needed prenatal care and was given medications known to be extremely unsafe during pregnancy.  *Id.* ¶¶ 41-43.  As just one example, for months defendants and their staff continued to administer Valproic Acid to Alyssa three times a day, which had been prescribed previously for her Schizophrenia.  *Id.*  Valproic Acid is dangerous during pregnancy and absolutely should not have been given to Alyssa when pregnant.  *Id.*

Plaintiffs filed this action in Alameda County where three of the named corporate officer and director defendants reside.  *Id.* ¶¶ 14-16.  The three Alameda County residents are Rowena Beduya who was Mariner's "Vice President of Clinical Operation," Thomas Durr who was Mariner's "Director of Patient Advocacy," and Anton Genabe who was Mariner's "Regional Director of Clinical Operations."  *Id.*  These defendants are corporate and regional overseers who were responsible for resident safety compromises at Pine Ridge and other Mariner facilities, including the systemic failures to ensure the facilities were

1   sufficiently, as well as systemic failures to ensure vulnerable residents, including Alyssa, were safe from sexual

2   predators.  *Id.*, ¶¶ 14-16 and 57 (*see also* below). [1]

3           In its present motion, defendant cites to paragraphs 14-16 of the Complaint and argues the

4   allegations as to the defendants Beduya, Durr and Genabe are "vague."  However, defendant overlooks the

5   entirety of the of the charging allegations against.  As alleged in the pleading, the neglect of Alyssa was the

6   result of systemic failures by Mariner's officers and directors who were overseeing Pine Ridge, particularly in

7   the areas of staffing and taking measures to prevent sexual abuse, as well as other failures:

8   • Defendants[2] "were part of the team that ***ignored their obligations and failed to protect***
9     [Alyssa] and similar vulnerable ***residents from sexual abuse and assault***." Renneisen Decl.,
      ¶ 2 & Ex A (Complaint) ¶ 57.

10  • "***[D]efendants minimized labor costs by intentionally refusing to hire sufficient***
11    ***numbers of care providers*** to care for those residents, monitor their conditions, and
      provide adequate care." *Id.* ¶ 56.

12  • "[D]efendants ***failed to employ sufficient supervisory staff*** to oversee and train the care
13    giving staff and to ensure that the care they provided met all applicable standards." *Id.* ¶ 56.

14  • "Defendants were motivated by a desire to increase their profits, and thus they ***reduced***
      ***staff, supervision, care, and supplies to dangerously low levels***" *Id.* ¶ 59.

15  • There was "***chronic understaffing and failures to screen and supervise staff and***
16    ***residents***, that were ongoing at Pine Ridge for several years" *Id.* ¶ 41.

    • Defendants "***knew that Pine Ridge had received resident and family complaints of***
17    ***poor care and regulatory deficiency notices for neglect*** [and] ***yet did not increase***
      ***staffing or take corrective action***." *Id.* ¶ 58.

18  • "Defendants . . . ***knew Pine Ridge had so few staff that the staff could not possibly***
19    ***protect their patients from potential sexual abuse and assault***, or attend to their basic
      custodial needs, among other things." *Id.* ¶ 58.

20  • "***Despite this knowledge, defendants failed to take any steps to prevent resident***
21    ***neglect and abuse, failed to hire additional staff, failed to employ supervisory staff to***
      ***ensure that care was delivered appropriately***, and continued to admit new residents to
22    maximize profits, knowing Pine Ridge did not have sufficient staff to care for them." *Id.* ¶ 58.

23  • "[D]efendants . . . ***failed to hire, train, and supervise sufficient numbers of caregiving***
      ***staff*** to ensure that residents at Pine Ridge, including Alyssa, were provided with the basic
24    custodial care needed to protect them from sexual abuse." *Id.* ¶ 55.

25  • "Defendants also had a ***long pattern of failing to properly train staff regarding sexual***
26    ***abuse in the health care setting.***" *Id*, ¶ 47.

27
28  [1] The other individual defendants in this case are Linda Taetz who was Mariner's "Senior VP" and Dennis Sarcauga
    who was Mariner's "Executive VP."  Renneisen Decl., ¶ 2 & Ex A (Complaint) ¶¶ 12-13.

    [2] The term "defendants" in the Complaint is specifically defined to include Beduya, Durr and Genabe as individuals, as
    well as others.  *See* Renneisen Decl., ¶ 2 & Ex. A (Complaint) ¶ 18.

- "[D]efendants *[failed] to properly screen, supervise, monitor, and train management and staff … to prevent incidents of improper sexual advances* . . . upon Alyssa." *Id.* ¶ 36.

- "Defendants also had a long pattern of *failing to properly . . . create, implement and follow necessary policies and procedures* to prevent" incidents of sexual abuse.  *Id.* ¶ 47.

- "Defendants also had a long pattern of . . . *failing to properly investigate and respond to incidents and complaints of [sexual] abuse*, and *allowing a culture where such abuse was tolerated and/or ignored.*" *Id.* ¶ 47.

- Defendants had a "*pattern . . . to cover-up incidents of sexual assaults*" *Id.* ¶ 41 & 63.

- "[D]efendants . . . *fostered and permitted a corporate-wide culture of allowing and/or ignoring sexual abuse and assault of residents in Mariner facilities*, including Pine Ridge. These defendants have long been aware of systemic failures in how Mariner prevents, investigates, and responds to incidents of sexual abuse and assault in its facilities, and yet they *took no corrective action whatsoever.*" *Id.* ¶ 61.

- "[I]n 2019 the California Department of Public Health (DPH) conducted an investigation and then cited Pine Ridge for systemic failures that led to horrific sexual abuse of at least one resident and allegations of unwanted sexual contacts by no less than 6 Pine Ridge residents. This resulted in a Class A Citation and a $20,000 fine.  Defendants, including the Individual Defendants, were directly responsible for *failing to remedy these rampant failures* at Pine Ridge that then later resulted in the sexual abuse and rape of Alyssa."  *Id.* ¶ 62.

- "The defendants owed Alyssa a duty" to "protect her from sexual abuse and assaults. [¶] *The defendants failed to meet these duties of care.*" *Id.* ¶ 73.

- **"Pine Ridge's administrator directly reports to individuals from the Mariner Corporate Defendants**, including the individually named defendant herein." *Id.* ¶ 24.

## B.    Defendant's Motion To Transfer Venue And Efforts At Venue Related Discovery

Defendant filed this motion to transfer venue on August 11, 2022, as shown in the Court's online register of actions.  Renneisen Decl., ¶ 3.  In evidentiary support of this motion, defendant relies on declarations from its counsel Zahra Aziz and from defendant Rowena Beduya.  Defendant has not filed any declarations from defendants Durr or Genabe.  The declarations from counsel Aziz and Ms. Beduya make no showing at all concerning defendants Durr or Genabe or any reference to them.

Defendant filed an ex parte application to stay all discovery pending the hearing on this motion, to which plaintiffs filed an opposition, that was scheduled for hearing on August 26, 2022.  Renneisen Decl., ¶ 4.  At the hearing the Court did not grant the application to stay discovery.  *Id.*  Counsel for both sides later confirmed in emails that same day an understanding that the Court had indicated they should meet and confer to allow plaintiffs access to documents and information relevant to the venue issue.  *Id.* ¶ 5 & Ex. B (8/26/22 Emails).  That day plaintiffs met and conferred and requested defendant to produce (1) job descriptions for Beduya, Durr and Genabe in effect during Alyssa's residency at Pine Ridge, (2) any Mariner

organizational charts in effect during Alyssa's residency that reference these defendants, (3) any resumes or CVs for these defendants in effect during the residency, (4) copies of transcripts of any depositions given by them related to Mariner or any Mariner facility (with any patient names and personal health information redacted), and (5) all emails, correspondence and reports to or from Beduya, Durr, or Genabe that mention or refer to plaintiff Alyssa (omitting any materials to or from any attorney). *Id.*, p. 2. Plaintiffs also served PMQ deposition notices for these documents that same day, but made clear in the email from plaintiffs' counsel they would be happy to meet and confer on the timing. *Id.; see also* ¶ 6 & Ex. C (Depo Notices).

The following Monday, however, defendant sent a harsh letter quoting CCP section 128.7 suggesting the request for venue related discovery was improper and somehow would support an award of sanctions against plaintiffs' counsel. Renneisen Decl., ¶ 7 & Ex. D (8/29/22 Letter), p. 2. Along with this, the letter boldly proclaimed "Defendant Pine Ridge is under no obligation to perform Plaintiffs' research" regarding the issue of venue. *Id.* As for the documents requested, defendant claimed it is "inconceivable as how they are related to venue" and flatly refused to produce any documents other than job descriptions. *Id.*, pp. 2-3. On September 1, 2022, defendant served objections to the PMQ deposition notices and to all five of the categories of documents requested. Renneisen Decl., ¶ 8 & Ex. E. Defendant asserted, among other things, that the depositions cannot go forward because this Court lacks jurisdiction over this case, the deposition notices were premature, they seek irrelevant material, they are harassing, and they seek trade secret materials. *Id.* at pages 2 and 5-6. On September 15, 2022, plaintiffs attempted to meet and confer regarding the venue PMQ depositions. Renneisen Decl. ¶ 9 & Ex. F (9/15/22 M&Cs), pp. 1-2. In response, defendant accused plaintiffs of "completely ignoring the Court's direction" and asserted that the venue PMQ deposition notices should be withdrawn. *Id.* pp. 5-6. In reply, plaintiffs again requested defendant to produce the venue PMQs and documents, and that defendants produce Beduya, Durr and Genabe for depositions concerning the issue of venue. *Id.* p. 6. Plaintiffs offered to agree to continue the venue hearing if defendant needed more time. *Id.* As of the time of signing this opposition, defendant has not responded. *Id.*

## III.  ARGUMENT

### A.    Defendant Has The Burden To Prove Venue In Alameda County Is Improper

"In the absence of an affirmative showing to the contrary, the law presumes that the county in which an action is brought is, prima facie, the proper venue for the proceeding." *Mission Imports, Inc. v. Superior Court of San Francisco (Monterey Bay Co.)*, 31 Cal.3d 921, 928 (1982). "The burden of proof to negate proper

venue in the county where the action is commenced is upon the party seeking to change venue. The prima

facie presumption that plaintiff has selected the proper venue must be overcome by that moving party."

*Mitchell v. Superior Court*, 186 Cal.App.3d 1040, 1046 (1986)(citing *Ward Mfg. Co. v. Miley*, 131 Cal.App.2d 603,

606-607 (1955) and *Hearne v. De Young*, 111 Cal. 373, 376 (1896)).

**B.      Defendant's Argument That Venue Must Be Transferred Under CCP § 395(a) Because The Agreement And The Assaults Occurred In Marin County Is Meritless**

Defendant spills considerable ink arguing venue must be transferred because the nursing home

admission agreement and the sexual assaults of plaintiff Alyssa occurred in Marin County, as indicated in the

Complaint.  Conveniently, defendant fails to acknowledge all of the other allegations in the Complaint

detailing the systemic failures by the corporate overseers and their agents, including defendants Beduya, Durr

and Genabe, that led to the assaults.  This conduct is detailed in Section 2.A above.  Regardless, the law is

clear that plaintiffs may file this action where any of the defendants reside.  The very first sentence of CCP

section 395(a) states "the superior court in the county where the defendants or some of them reside at the

commencement of the action ***is the proper court for the trial of the action***."  CCP § 395(a)(emphasis

added).  Section 395(a) goes on to provide that, in personal injury actions, the plaintiff also has the option of

filing in "either the county where the injury occurs . . . or the county where the defendants, or some of them

reside at the commencement of the action." *Id.*  "Thus, where a claim is 'for injury to person,' the plaintiff

has a choice with respect to venue—either 'where the injury occur[ed]' or where the defendant resides."

*Williams v. Superior Ct. for Cnty. of Contra Costa*, 71 Cal. App. 5th 101, 109 (2021).  Here, plaintiffs were entirely

allowed to file this action where three of the defendants reside.  Defendant's discussion of other permissible

venues does not negate this fact or satisfy its burden on this motion.  "To succeed on a motion to change

venue, it must be shown that the county in which the action was filed was 'improper under any applicable

theory.'" *Black Diamond Asphalt, Inc. v. Superior Ct.*, 109 Cal. App. 4th 166, 170 (2003)(citation omitted).

**C.      Defendant's Motion Must Be Denied Because It Has Failed To Make Any Showing To Negate Venue Based On The Residencies Of Defendants Durr And Genabe**

This motion must initially be denied as a matter of law because defendant has not met its burden to

affirmatively show that venue based on the residencies of defendants Durr and Genabe is improper.  The

law is clear on this point.  On a motion to transfer, "[t]he moving party must overcome the presumption that

the plaintiff has selected the proper venue." *Fontaine v. Superior Ct.*, 175 Cal. App. 4th 830, 836 (2009).  When

venue is based on the residence of a defendant, the party moving to transfer venue has "the burden" to show

"that none of the defendants" reside in the county and if the moving party fails to "establish this essential fact" the motion is properly denied. *Greenleaf v. Jacks*, 133 Cal. 506, 507 (1901).

Moreover, "[i]n determining a motion for a change of venue, the court must accept as true the material allegations of the complaint which are not controverted." *White v. Kaiser-Frazer Corp.,* 100 Cal. App. 2d 754, 758 (1950). Here, the complaint alleges Durr and Genabe are Alameda County residents. Renneisen Decl., ¶ 2 & Ex. A (Complaint) ¶¶ 15-16. It also alleges these defendants had direct oversight and responsibility for the operations of Pine Ridge, and that they knew about the resident care compromises, including with respect to understaffing and failing to protect residents, including Alyssa, from sexual predators. *Id.* These and the other charging allegations *against these defendants* detailed in Section 2.A above, are controverted at all. Indeed, although it acknowledges they are Alameda County residents, defendant's motion strangely omits any reference to defendants Durr and Genabe other than generically asserting it is "obvious" they are sham defendants and then dropping a footnote that they have not been served with the summons and complaint yet. Def's MPA at p. 8.[3] Defendant provides no declarations or evidentiary showing from these defendants whatsoever. How defendant could think this sufficient to meet its burden on this motion is entirely unclear. What is clear is that that the failure to make any showing as to Durr and Genabe is fatal to defendant's motion. *See Stute v. Burinda*, 123 Cal. App. 3d Supp. 11, 15 (1981)("In resolving venue or proper court disputes, we treat plaintiff's choice of venue, as determined by the allegations in the complaint, as presumptively correct. The burden is on the defendant to show that plaintiff selected the wrong court. [Citation] In some cases, the burden of proof may shift back to plaintiff when a contrary declaration is offered. [Citation.] But this rule is of no help to the defendants in our case because they failed to offer any direct evidence"). Accordingly, defendant's motion must be denied.[4]

---

[3] Defendant Genabe has been served and defense counsel has agreed to provide a signed notice of acknowledgment of receipt for defendant Durr. *See, respectively*, Renneisen Decl. ¶ 10 & Ex. G (Genabe Proof of Service), Renneisen Decl., ¶ 11 ¶ Ex. H (Durr Notice of Acknowledgement).

[4] As a matter of due process and fundamental fairness, the Court should not consider new evidence on reply to which plaintiffs have not had the opportunity to fully respond. As a matter of due process and fundamental fairness, defendant is barred from attempting to meet its burden of production by presenting new facts and evidence on reply. *See, e.g., San Diego Watercrafts v. Wells Fargo Bank*, 102 Cal. App. 4th 308, 316 (2002)(trial court's consideration of declaration submitted with moving defendant's reply papers on summary judgment motion violated plaintiff's due process rights). This is also true outside the summary judgment context: "[t]he general rule of motion practice, which applies here [in the anti-SLAPP motion context], is that new evidence is not permitted with reply papers." *Jay v. Mahaffey*, 218 Cal.App.4th 1522, 1537-1538 (2013).

D.    **Defendant's Motion Should Be Denied Because Plaintiffs Obviously Named Beduya, Durr And Genabe In Good Faith**

Defendant had brought this motion to change venue pursuant to CCP section 395.  The California Supreme Court has repeatedly stated the following regarding motions brought under CCP section 395:

> [CCP section 395] does not justify a change of venue if the plaintiff, in joining the resident defendant, **has reasonable grounds for the belief in good faith that he has a cause of action against that defendant** and the cause of action pleaded is not prima facie so glaringly defective as to be beyond correction by amendment.

*Buerkle v. Superior Court of Los Angeles County*, 59 Cal.2d 370, 371 (1963)(emphasis added).

In *Peiser v. Mettler*, 50 Cal.2d 594 (1958), the California Supreme Court stated:

> In our opinion the rule, supported by reason and by authority, is that upon the hearing of the motion for change of venue . . .  **the real issue for determination by the trial court was whether plaintiff,** in joining the resident defendant as a party, **had reasonable grounds for the belief in good faith that plaintiff had a cause of action against the resident defendant**. If he did, then we do not believe that it may be said that the resident defendant was improperly joined as a defendant or was made a defendant solely for the purpose of having the action tried in the county of the residence of the resident defendant within the meaning of section 395 of the Code of Civil Procedure.

*Peiser* at 603.

In *Gottesfeld v. Richmond Ice Cream*, which is the only case cited by defendant to argue that the residencies of Beduya, Durr and Genabe should be disregarded, also supports the well-established rule that a cause of action pled in good faith against the resident defendant defeats a motion to change venue under CCP section 395. As stated in *Gottesfeld* , the issue is "whether plaintiff, in joining the resident defendant as a party, had reasonable grounds for the belief in good faith that plaintiff had a cause of action against the resident defendant."  *Gottesfeld v. Richmaid Ice Cream Co.*, 115 Cal.App.2d 854, 856 (1953).

Here, regardless of efforts by Ms. Beduya in her lawyer drafted declaration to minimize the extent of her and Mariner's role in the operations Pine Ridge, it is indisputable that plaintiffs named her as a defendant in their Complaint in good faith.  As even stated in her declaration, Ms. Beduya was the "Vice President of *Clinical Operations*" for Mariner Health Central, Inc. during the entire time of Alyssa's residency at Pine Ridge. Decl. Of Beduya In Support Of Def's Motion ("Beduya Decl.") ¶ 1.  She acknowledges her duties include "planning and directing clinical services," "implementation of clinical systems," "monitor[ing] staffing level standards," and "preparing for in-service programs, regulatory concerns, and surveys." *Id.* ¶ 3.  These admissions correspond closely to the allegations in plaintiffs' Complaint concerning Ms. Beduya's role and responsibilities regarding the overall systemic failures by Mariner and its officers and directors.  Plaintiffs and

1    defendants drastically disagree about the defense's claim that Mariner and its top personnel, including Ms.

2    Beduya, are not responsible for the patient care at the facilities, as well as their it solely the job of the

3    Director of Nurses.  Renneisen Decl. ¶ 12.  However, to say plaintiffs did or do not have a good faith belief

4    and reasonable grounds to assert claims against Mariner and its VP of Clinical Operations is not true.  *Id.*

5          For example, prior to filing this case, plaintiffs' counsel of course had reviewed materials that

6    Mariner puts into the public domain, including on its website, with assertions about the care Mariner

7    provides to residents at its facilities.  Renneisen Decl., ¶ 13 & Ex. I (Mariner Website) (e.g., p. 2 stating "At

8    Mariner Health Care we treat our patients, residents and employees at part of our family" and p. 3 stating

9    "Mariner Healthcare facilities offer comprehensive skilled nursing care 24 hours a day, 7 days a week.  We

10   are concerned about the quality of life for each of our residents.").

11         As another example, plaintiffs' counsel of course was aware when the Complaint in this case was

12   filed on June 16, 2022, that Mariner Health Central, Inc. was hit with a massive jury verdict and huge award

13   of punitive damages based on the reckless neglect of several residents at one of its other facilities.  Renneisen

14   Decl., ¶ 14 & Ex. J (*Ledesma* Judgment and Verdicts).  That 2021 verdict was in the case of *Ledesma, et. al., v.*

15   *Mariner Health Care, Inc.*, Alameda County Superior Court Case No. RG19025110.  *Id.*  The verdict in that

16   case included special findings by the jury that Mariner was 60% responsible for the neglect of patients at the

17   facility (compared to the 40% of the facility), that plaintiffs had shown by clear and convincing evidence the

18   neglect by Mariner's employees were substantial factors in causing harm to the plaintiffs, and that plaintiffs

19   had shown by clear and convincing evidence that officers, directors or managing agents of Mariner had

20   neglected the plaintiffs with malice, oppression or fraud.  *Id.*  Copies of the judgement and signed verdict

21   forms showing these findings that plaintiffs' counsel was aware of when this lawsuit was filed are provided as

22   exhibits. *Id.*  These findings of course completely refute the suggestion, put forth in Ms. Beduya's declaration

23   and defense counsel here, that only the facility DON is responsible for patient care.  They also substantiate

24   plaintiffs' good faith basis and reasonable grounds to believe that Beduya and the others overseeing Pine

25   Ridge were responsible for the systemic failures that led to the neglect of Alyssa.

26         Given the above, it is clear that plaintiffs had a good faith basis and reasonable grounds for naming

27   Ms. Beduya as a defendant and this motion must be denied under the controlling case law.

28

**E.    Defendant's Motion Should Be Denied Because Beduya, Durr And Genabe Are Properly Named Defendants In This Action**

Defendant's motion must fail because it is based upon the faulty premise that Beduya, Durr, and Genabe were not properly named as defendants.  Certain principles are repeatedly echoed in the case law.

First, it is "the rule" that upon the hearing a motion under CCP section 395, "the court should not try, upon conflicting affidavits, the issues of fact going to the merits of the cause of action stated against the resident defendant." *Gottesfeld v. Richmaid Ice Cream Co.*, 115 Cal.App.2d 854, 856 (1953)(quoting *California Collection Agency v. Fontana*, 61 Cal.App.2d 648, 653 (1943).  Instead, the motion "must be determined from an examination of the pleadings then before the court[.]" *Gottesfeld* at 856.  Accordingly, this Court should rely upon the allegations in plaintiffs' Complaint, and it need not wade deeply into making determinations of fact regarding Mariner, Beduya, Durr and Genobe's role in the operations of Pine Ridge.

Second, the standard by which the Complaint should be reviewed to determine whether it defeats defendant's motion to change venue is extraordinarily low: "If the allegations in question did no more than *shadow forth the semblance* of a cause of action, they would be proof against assault upon the ground they were sham and frivolous." *McClung v. Watt*, 190 Cal. 155, 160-161 (1922)(emphasis added); *see also Gottesfeld v. Richmaid Ice Cream Co.*, 115 Cal.App.2d 854, 856 (1953)(same), *Gutierrez v. Superior Court, City and County of San Francisco*, 243 Cal.App.2d 710, 726 (1966)(same); and Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial ¶ 3:492.1 (The Rutter Group 2022)(stating "not much is required to overcome claims of sham joinder" under CCP section 395 and citing *Freeman v. Dowling*, (1933) 219 Cal. 213, 216 (1933)).

Here, plaintiffs' Complaint more than meets the standard under *McClung* because it resoundingly states causes of action against defendant Beduya, Durr, and Genobe.  These are provided in detail in the discussion of the complaint above.  *See* Section II.A, above.  The Complaint does not merely allege reckless neglect of Alyssa by the staff at Pine Ridge.  *Id.*  Rather, plaintiffs also allege that the Mariner corporate defendants, *and* their key officers and directors, were actually the root cause of the neglect.  *Id.*  This includes defendants Beduya, Durr, and Genobe, as well as defendants Taetz and Sarcauga.  *Id.*  As stated in the Complaint, these defendants were and are responsible for the widespread and systemic failures in nursing care at Pine Ridge that led to the tragic abuse of Alyssa.  *Id.*  This includes, among other things, intentionally understaffing the facility to increase profit, not implementing policies and procedures, training and other needed measures to prevent sexual abuse, and actually sweeping incidents and complaints of sexual abuse

under the rug and fostering an environment where sexual abuse was tolerated or ignored.  *Id.*  These charging allegations in support of plaintiffs' claims directly implicate Beduya, Durr, and Genobe's roles as corporate and regional overseers for Pine Ridge, and they certainly shadow forth vastly more than a semblance of a cause of action.  Under *McClung* and its progeny, defendant's motion must be denied.

Moreover, even if the Court were to look beyond the Complaint's allegations against these defendants, defendant has not met its burden to show that Beduya, Durr, and Genobe are not proper defendants. There has been no showing at all regarding Durr and Genobe.  As for Beduya, the Court should be aware that despite defendant's refusal to produce her for deposition or to produce any transcripts of her prior Mariner related depositions, she has testified under oath about her role at Mariner.  Renneisen Decl., ¶¶ 15-16 & Exs. K and L.  Other Mariner personnel have also testified about such matters.  *Id.*  Plaintiffs attach sworn testimony from Ms. Beduya, Mariner's Exec. VP Dennis Sarcauga, Mariner President Ken Tabler, and Mariner's Senior VP Linda Taetz in the *Ledesma* case.   Renneisen Decl., ¶¶ 15-20 & Exs. K-P.  While the number of admissions are many, plaintiffs request the Court review this testimony because it shows the complete lack of credibility for this motion by the defense and supports an award of sanctions as requested in Section II.H below.

In *Ledesma*, Ms. Beduya testified broadly regarding her role as VP of Clinical Operations.  Ms. Beduya testified "I have 20 nursing facilities that I ***oversee***, along with the Regional Director of Clinical Operations."  Renneisen Decl., ¶ 15 & Ex. K (Beduya 2/17/21 Depo) at 153:3-154:4 (emphasis added).  As stated by Ms. Beduya:  "With my position as the Vice President of Clinical Operation of the company, ***my focus is not just staffing; I am in charge of the entire clinical operations of the company***."  Renneisen Decl., ¶ 16 & Ex. L (Beduya 1/19/21 Depo) at 80:4-25 (emphasis added).  These assertions correspond to plaintiffs' allegations that Ms. Beduya as VP of Clinical Operations, Anton Genabe as Regional Director of Clinical Operations, and others were in fact overseeing clinical operations and staffing at Pine Ridge.  Also, while the charging allegations against Beduya in the complaint here are mostly directed to her oversight of care at Pine Ridge, it is noteworthy that Ms. Beduya's declaration to this Court states under penalty of perjury that "I do not provide custodial care nor direct care to residents at facilities that Mariner Health Central, Inc. contracts with."  Beduya Decl., ¶ 4.  However, in the *Ledesma* case, she testified that she does provide direct care at Mariner facilities.  Ms. Beduya testified "I'm responsible for overall planning and directing clinical services. . . And right now, because of COVID more so, we actually provide --

myself.  I'm even out on the floor passing meds, or doing treatment.  So we can do that as well, as part of -- especially in a staffing crisis."  Renneisen Decl., ¶ 16 & Ex. L (Beduya Depo) at 115:16-116:11.  This conflict in what Ms. Beduya will say when it suits defendant's purposes is concerning.  Regardless, she clarified that she and the regional team are responsible for ensuring the facilities are properly staffed:

> Q.  Do you think it is your job to ensure that the RDCO and the RVPO are ensuring that the Director of Nursing and DSD, for example, are staffing the facility to the needs of the patients?
>
> A.  It -- yes.  Through my RDCO.  Through my Clinical Director of Regional Operations, yes.  Yes.

Renneisen Decl., ¶ 15 & Ex. K (Beduya 2/17/21 Depo) at 237:22-238:2.

Again, plaintiffs respectfully request the Court to review all of Ms. Beduya's deposition testimony provided from the *Ledesma* case as it completely refutes defendant's fact presentation here.  While the defense may try to spin Beduya's testimony, there is no doubt that she is a properly named defendant.

In addition, there is testimony from Dennis Sarcauga who is Beduya's boss.  Renneisen Decl. ¶ 17 & Ex. M (Sarcauga Depo) at 7:19-24; 35:16-19; 77:16-20.  He says Beduya is responsible to "make sure the director of nurses implements" the clinical policies and procedures at the facility.  *Id.* at 91:9-21; 94:13-95:9.  He says Ms. Beduya is also responsible to "Make sure that the systems are in place, rules and regulations are followed, [and] policies and procedures are followed" at the facility level.  *Id.* at 105:25-105:25.  According to Mr. Sarcauga, Ms. Beduya is also responsible for making sure doctors orders are followed at the facility level.  *Id.* at 112:7-113:1. Mr. Sarcauga also testified that quality measures are the primary responsibility of Ms. Beduya, as is overseeing staffing issues.  *Id.* at 134:3-136:1.  Mr. Sarcauga further testified:

> A.  And you're responsible, as EVPO, for making sure that there is a proper number of nursing staff at any given time at the facility, Parkview?
>
> A.  Yes.
>
> Q.  And one of ways you do that is by assigning certain responsibilities to Rowena Beduya and Kathleen DeJesus, correct?
>
> A.  Yes.  And also to the RVPO.

Renneisen Decl., ¶ 17 & Ex. M (Sarcauga Depo) at 292:15-293:3.

Ken Tabler is the president of Mariner Health Central, Inc.  Renneisen Decl., ¶ 18 & Ex. N (Tabler 3/21/21 Depo) 18:4-6. He testified that with respect to preventing sexual assaults, he and Mariner have the responsibility to "ensure that the proper people are in place, and [that] policies and procedures to with, and address these issues" are in place.  *Id.* 38:16-19.  He further testified that Ms. Beduya is "in charge of clinical

operations" and that this includes making sure the facilities get the training needed. *Id.* at 137:15-23. He also testified that Tom Durr is a "problem solver" and his responsibilities are as a "family or patient advocate, [and] he deals with families that may have an issue. He's kind of an internal ombudsman." *Id.* at 183:9-18.

Mariner's Senior VP Linda Taetz testified that Mariner's Regional VP of Clinical Operations reports to Ms. Beduya. Renneisen Decl., ¶ 19 & Ex. O (Taetz Depo) at 82:21-6. According to Ms. Taetz, Ms. Beduya and Mr. Durr receive the reports from complaints made to Mariner's ethics hotline. *Id.* at 138:24-140:3. She also testified that Mariner's Regional VP of Operations is on the governing body of all of Mariner's nursing homes in Northern California. *Id.* at 26:5-12. Ms. Taetz further testified that Rowena Beduya and Tom Durr are on the compliance committee. *Id.* at 26:13-21. President Ken Tabler testified the Medicare regulations require that there be a compliance committee and a compliance program to make sure operations are in accordance with Medicare regulations. Renneisen Decl., ¶ 20 & Ex. P (Tabler 9/30/20 Depo) at 20:9-20.

Again, even though defendants may try to spin the role of Mariner and its top officials in the operations of the facilities, which they apparently failed to do successfully in the Ledesma case, the reality is that plaintiffs have validly asserted claims against them. Ms. Beduya and the others are not immune from liability simply because they were officer and employees of Mariner. *See, e.g., Balisok*, Elder Abuse Litigation § 9:79-80 (The Rutter Group 2022)(corporate "officers, directors or administrators are liable . . . under established tort law if they engage in conduct considered reckless, oppressive, fraudulent or malicious and thereby affect the care provided by staff in a custodial setting to the injury of the elder."); *see also Wyatt v. Union Mortgage Co.*, 24 Cal.3d 773, 785 (1979)("Directors and officers of a corporation are not rendered personally liable for its torts merely because of their official positions, but may become liable if they directly ordered, authorized or participated in the tortious conduct.").

Defendant Beduya and the others are analogous to the corporate executive who knows that a certain product or condition is dangerous, but fails to remedy the situation, knowing that some members of the public will likely suffer harm. *In Frances T. v. Village Green Owners Assoc.*, 42 Cal. 3d 490, 508 (1986), the Court explained that corporate officers or directors are individually liable if they "specifically knew or should have known that some hazardous condition or activity under their control could injure plaintiff" and failed to take appropriate action to avoid the harm. There, the directors of a condominium association had received complaints about inadequate exterior lighting and knew of recent burglaries, yet they failed to order that

additional lighting be installed.  *Id.* at 510-511.  They were liable for injuries sustained by plaintiff when she was attacked outside of her unit.  "[L]ike any other employee, directors individually owe a duty of care, independent of the corporate entity's own duty, to refrain from acting in a manner that creates an unreasonable risk of personal injury." *Id.* at 505.  In *Dwyer v. Lanan & Snow Lumber Co.*, 141 Cal. App. 2d 838, 841(1956), the president of the lumber company was personally liable for injuries resulting from a downed mooring cable, since he had been informed of the dangerous condition and had not acted to remedy it.

Moreover, this case is completely unlike the situation in the *Gottesfeld* which defendant relies so heavily upon. *See* Def's MPA at pp. 8-9.  Unlike *Gottesfeld*, the allegations here are very detailed and not vague at all, the complaint does ask for relief against Beduya, Durr and Genabe, the complaint does not single out the residence of Alameda residents (defendants Sarcauga and Taetz reside in S. Cal), and the factual showing here is overwhelming that these defendants are properly named. Also, *Gottesfeld* is one of the cases that has acknowledged the California Supreme Court's opinion in McClung and its progeny.  *See Gottesfeld v. Richmaid Ice Cream Co.*, 115 Cal.App.2d 854, 856 (1953).  *Gottesfeld* provides no aid to defendant's arguments here.

In summary, the standard is "[i]f the allegations in question did no more than shadow forth the semblance of a cause of action, they would be proof against assault upon the ground they were sham and frivolous." *McClung v. Watt*, 190 Cal. 155, 160-161 (1922).  Defendant has not and cannot meet its burden to show plaintiffs' Complaint does not satisfy this standard.  Beyond that, the law is clear the Court should not enter the fray of making factual determinations, but even if it did, substantial evidence shows Beduya and the others, as high-level operatives of Mariner, can be held liable for the systemic failures that led to the assault of Alyssa.  On the other hand, defendant has presented a declaration from Ms. Beduya which calls her credibility entirely into question when compared to her sworn testimony about passing meds and doing treatments on the floor of Mariner facilities.  Accordingly, defendant's motion should be denied.

## F.    Defendant's Motion To Transfer Venue Under CCP § 397(c) Is Utterly Meritless

Defendant seeks to transfer venue Section 397(c), which allows for transfer of venue "[w]hen the convenience of witnesses and the ends of justice would be promoted by the change."  For such motion, the "burden rests on one who seeks a change of venue . . . to prove that both the convenience of witnesses and ends of justice will be promoted thereby, and this he must do through affidavits that contain more than generalities and conclusions." *Hamilton v. Superior Ct.*, 37 Cal. App. 3d 418, 424 (1974); *Tutor-Saliba-Perini Joint Venture v. Superior Ct.*, 233 Cal. App. 3d 736, 744 (1991)(same); *Buran Equip. Co. v. Superior Ct.*, 190 Cal. App.

3d 1662, 1667 (1987)("The record is wholly inadequate to sustain a ruling of change of venue based on witness convenience, since not one declaration has been lodged directed at that subject.").

Case law interpreting Section 397(c) holds defendant's motion can only be made upon a "rigorous showing."  Defendant has to show by way of declarations the names of witnesses expected to testify; the substance of their expected testimony; whether they have been deposed or have given a statement regarding the facts of the case; the reasons why it would be "inconvenient" for the witnesses to appear locally at trial; and the reasons why the "ends of justice" would be promoted by transfer to a different county (e.g., to permit view of the scene or make other material evidence available).  *Juneau v. Juneau*, 45 Cal. App. 2d 14, 16 (1941); *see also Weil & Brown*, Cal. Prac. Guide: Civ. Pro. Before Trial (The Rutter Group 2022) ¶ 3:576.

Here defendant has utterly failed to meet its burden.  Defendant has provided no declaration establishing inconvenience.  Indeed, the only witness declaration provided is from defendant Beduya who resides in this county.  Defendant has also failed to identify the name of a single witness for the defense side or plaintiffs' side for that matter that would be inconvenienced. Nor has defendant identified the substance of any expected testimony and/or whether the witness has been deposed or has given a statement regarding the facts of the case.  Instead, defendant merely refers to "employees at Pine Ridge" generally.  However, it is well established law that the convenience of witnesses who are employees of the litigants is <u>not</u> to be considered.  *Stute v. Burinda*, 123 Cal. App. 3d. Supp. 11, 17 (1981).

Defendant then suggests in the most conclusory fashion that transfer under section 397 is necessary because it "is safe to conclude that Marin County is a convenient forum" for Pine Ridge employees (whose convenience are not to be considered as set forth above).  Defendant's argument is entirely meritless.  This court is less than 25 miles away from the Pine Ridge facility in San Rafael.  Plaintiffs have the right to depose any of defendant's employees within 75 miles of their home.  CCP § 2025.250(b).  Thus, the legislature presumptively considers the range of 75 miles to be convenient.  Moreover, defendant's exclusive reliance on the *Richmond Hotel* case is entirely misplaced.  In that case, the court was presented with actual declarations from witnesses to establish inconvenience, and the distance involved (San Mateo to Tulare County) was 210 miles which is a far cry from the distance here.  *Richfield Hotel Mgmt., Inc. v. Superior Ct.*, 22 Cal. App. 4th 222, 224 & 227 (1994).  Furthermore, even if we were dealing with a distance of 25 or more miles, the Alameda County Superior Court is equipped to have witness testimony by remote video appearance and there is a protocol for doing exactly, as defense counsel knows.  Finally, defendant has not made the requisite showing

that costs and fees were posted with the filing of the motion based on "convenience of witnesses" grounds as required by CCP section 399(a). In sum, defendant has not met its burden and the motion must be denied.

## G.    Sanctions Are Warranted Against Defendant

CCP section 396b(b) provides that "the court may order the payment to the prevailing party of reasonable expenses and attorney's fees incurred in making or resisting the motion to transfer . . ." In determining whether sanctions should be ordered, the court shall take into consideration "whether the motion or selection of venue was made *in good faith given the facts and law the party making the motion or selecting the venue knew or should have known*." CCP § 396b(b)(emphasis added.)

Sanctions against defendant are particularly appropriate as there is no valid legal basis for its motion. Defendant acknowledges that Beduya, Durr, and Genabe are Alameda County residents. Defendant's suggestion that these corporate personnel overseeing Pine Ridge are sham defendants is belied by even a cursory reading of plaintiffs' Complaint, which gives a detailed account of their tortious acts. It is also belied by the verdicts in *Ledesma*, and by the deposition testimony therein that defendant tried to hide from plaintiffs as cited above. Defendant knew and should have known this motion was utterly meritless and, along the way, it has completely delayed basic discovery in the case. *See, e.g.*, Renneisen Decl., ¶ 9 & Ex. F (M&C Emails). Defendant also failed to make any effort to meet the rigorous factual showing required to even invoke section 397(c) for transfer. Finally, defendant also suggested that plaintiffs' counsel should be personally sanctioned under CCP section 128.7 for filing this action in Alameda County and/or for requesting venue related discovery. This matter presents a compelling case for sanctions.

Plaintiffs' counsel has spent over eight (8) hours drafting this opposition brief. Adding in an estimated two (2) hours for preparing and appearing at oral argument, plaintiffs estimate ten (10) hours of attorney time. Renneisen Decl., ¶ 21. The hourly rate for plaintiffs' counsel is $725. *Id.* Accordingly, plaintiffs respectfully request sanctions in the amount of $7,250 be issued against defendant. *Id.*[5]

---

[5] To put the fine edge on why sanctions should issue for this frivolous motion, plaintiffs provide this string cite with descriptions of the testimony by Beduya that shows this motion is in bad faith. *See* Renneisen Decl., ¶ 16 & Ex. L (Beduya 1/19/21 Depo) at 35:22-36:14 (Beduya has access to medical records of all patients at Mariner facilities); 43:10-44:1 (complaints of sexual abuse would first go to Genabe as Regional Director of Clinical Operations ("RDCO") and then to Beduya); 44:20-45:12 (Mariner's expectation is that the RDCO and Beduya be notified of any allegations of sexual abuse or other neglect); 45:17-22 (Beduya was notified of allegation of sexual abuse in a facility she oversees where there was a transfer to another Mariner facility); 49:25-50:10 (Beduya "works" at the facilities and is "aways in the facility"); 80:4-25 (Beduya in charge of "entire clinical operations of the company"); 84:5-13 (Beduya aware that Pine Ridge was not able to meet minimum staffing levels for nurses); 91:12-17 (facility budget for nurse staffing is sent to

**H.    If The Court Is In Any Way Doubtful, It Should Order Defendants To Produce The Venue Discovery And Defendants Beduya, Durr And Genabe For Deposition**

As detailed in Section 2.B above, plaintiffs' efforts to conduct venue related discovery were met with great opposition (indeed with threats that plaintiffs' counsel would be sanctioned for even asking). This is likely because defendant knew such discovery would completely refute the assertions that defendants Beduya, Durr, and Genabe are sham defendants (as shown by the deposition testimony in the *Ledesma* case). If there is any doubt that defendant's motion must be denied, plaintiffs request the Court continue the hearing and order defendants to produce the outstanding venue PMQs and documents in full and produce defendants Beduya, Durr, and Genabe for venue related depositions.

## IV.    CONCLUSION

Plaintiffs request that the Court deny the motion and grant plaintiffs' request for monetary sanctions.

Dated: September 20, 2022

Dudensing Law

_____

Jay P. Renneisen
Attorney for Plaintiffs

---

Administrators and Directors of Nursing by Mariner's Regional VP of Operations); 115:16-116:11 (Beduya responsible for overall planning and directing of clinical services, among other things); 116:12-116:24 (Beduya monitors staffing levels at facilities); Renneisen Decl., ¶ 15 & Ex. K (Beduya 2/17/21 Depo) at 143:25-144:9 (Beduya stating clinical care outcome "Is my duty"); 144:10-22 (duties of Beduya and her RDCOs include making sure facility staff is trained on abuse and neglect and protocols for same); 153:3-154:4 (Beduya "oversees" 20 nursing facilities); 155:25-156:14 (Beduya's practice is to speak to her RDCO regarding any allegations of abuse); 157:18-159:5 (Beduya's responsibilities include following up on any alleged abuse or neglect, including making sure Mariner's RDCO and RVPO are aware); 159:6-160:4 (Beduya's responsibilities regarding sexual abuse allegations include "proper plans" so "patients will be protected"); 167:18-168:5 (event or incidents at the facility need to be communicated to Mariner's regional nurse and then to Beduya); 176:7-19 (Beduya stating its important for her and her RDCOs to know what is happening at the facilities so they can implement best practices in the "buildings that are under us"); 179:15-18:12 (Beduya listing all the things she and her regional personnel purportedly do to ensure proper care is given in the facility); 184:14-185:18 (Beduya listing her role in ensuring that training regarding sexual and other abuse is conducted at the facilities); 187:16-188:7 (Beduya's responsibilities include monitoring staffing levels at the facilities); 192:23-193:16 (Beduya acknowledging her responsibilities include following up on allegations of sexual assault in the facility); 202:5-203:14 (Beduya describing data she reviews to monitor staffing); 208:12-21 (same); 212:23-213:4 (same); 229:5-20 (Beduya says she personally monitors and ensures proper staffing by instructing the RDCO and the DON to conduct studies); 231:4-23 (Beduya describing steps she purportedly takes to ensure facility is staffed according to needs of the patients); 233:9-234:25 (same); 236:10-16 (Mariner's Regional VP of Operations oversees the facility administrator to ensure facility is properly staffing); 236:18-237:1 (Mariner's RDCO oversees the facility Director of Nurses to ensure proper staffing); 237:7-8 (Beduya oversees the RDCO); 237:22-238:2 (Beduya agreeing part of her job is to ensure proper staffing); 238:22-239:14 (Beduya purportedly ensures staffing is proper by going to the facility and looking at the care - "I also conduct my own visits so I can actually see what's going on as well at the facility"); 242:7-17 (Beduya saying "money matters" because money is needed "in order for us to provide proper care and treatment"); 270:1-10 (Beduya looks at the nursing daily assignment sheets when she visits the facilities); and 8:16-9:4 (Beduya's name and title and reference to her three prior depos). Ms. Beduya also filed a declaration in the *Ledesma* case clearly showing that she reviews quality assurance materials from Mariner's facilities and that Anton Genobe as RDCO is on the quality assurance committee at the facility level. Renneisen Decl., ¶ 22 & Ex. Q (Beduya 7/21/21 Declaration).