# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>MARINER HEALTH CENTRAL, INC., *et al.*,[1]<br><br>                Debtors. | Chapter 11<br><br>Case No. 22-10877 (LSS)<br><br>(Jointly Administered)<br><br>Re: Docket Nos. 70, 72, 74<br><br>**Hearing: October 25, 2022 at 11:00 a.m.**<br>**Objections Due: October 18, 2022 at 4:00 pm** |
| MARINER HEALTH CENTRAL, INC., PARKVIEW HOLDING COMPANY GP, LLC, AND PARKVIEW OPERATING COMPANY, LP,<br><br>                Plaintiffs.<br><br>v.<br><br>FILIMON ARZETA, *et al.*<br><br>                Defendants | Adv. Pro. No. 22-50418 (LSS)<br><br>Re: Docket No. 3 |
| MARINER HEALTH CENTRAL, INC., PARKVIEW HOLDING COMPANY GP, LLC, AND PARKVIEW OPERATING COMPANY, LP,<br><br>                Plaintiffs.<br><br>v.<br><br>UNITED STATES OF AMERICA ex rel. INTEGRA MED ANALYTICS LLC,<br><br>                Defendant. | Adv. Pro. No. 22-50419 (LSS)<br><br>Re: Docket No. 3 |

---

[1] The Debtors, along with the last four digits of each Debtor's tax identification number, are Mariner Health Central, Inc. (6203), Parkview Holding Company GP, LLC (1536), and Parkview Operating Company, LP (7273). The Debtors' headquarters are located at 3060 Mercer University Drive, Suite 200, Atlanta, GA 30341.

1

25876939-v1

| | |
|---|---|
| MARINER HEALTH CENTRAL, INC., PARKVIEW HOLDING COMPANY GP, LLC, AND PARKVIEW OPERATING COMPANY, LP,<br><br>                Plaintiffs.<br><br>    v.<br><br>PEOPLE OF THE STATE OF CALIFORNIA,<br><br>                Defendant. | Adv. Pro. No. 22-50420 (LSS)<br><br>Re:  Docket No. 3 |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' PRELIMINARY CONSOLIDATED OBJECTION TO MOTIONS OF THE DEBTORS FOR AN ORDER EXTENDING THE AUTOMATIC STAY, OR IN THE ALTERNATIVE GRANTING INJUNCTIVE RELIEF, TO STAY PROSECUTION OF CERTAIN ACTIONS AGAINST <u>NON-DEBTOR AFFILIATES</u>**

The Official Committee of Unsecured Creditors (the "<u>Committee</u>") hereby objects to the (i) *Motion of the Debtors for an Order Extending the Automatic Stay, or in the Alternative, Granting Injunctive Relief, to Stay Prosecution of the Integra Action Against Non-Debtor Affiliates* [D.I. 70, Adv. Pro. 22-50419 D.I. 3] (the "<u>Integra Stay Motion</u>"), *Motion of the Debtors for an Order Extending the Automatic Stay, or in the Alternative, Granting Injunctive Relief, to Stay Prosecution of Certain Actions Against Non-Debtor Affiliates* [D.I. 72, Adv. Pro. 22-50418 D.I. 3] (the "<u>Covered Actions Stay Motion</u>"), and their *Motion of the Debtors for an Order Granting Injunctive Relief and Enjoining Prosecution of the PSC Action* [D.I. 74, Adv. Pro. 22-50420 D.I. 3] (the "<u>PSC Stay Motion</u>" and together with the Integra Stay Motion and the Covered Actions Stay Motion, the "<u>PI Motions</u>").  In support of the relief sought herein, the Committee states as follows:

**PRELIMINARY STATEMENT**

1.  These Debtors filed these bankruptcy cases in large part due to extensive litigation pending against them and a significant number of their nearly 50 affiliates. Those affiliates did not seek to avail themselves of similar protections. The Debtors now seek extraordinary relief on behalf of those affiliates: an extension of the automatic stay and/or injunctive relief that prevents any of the litigations described in the PI Motions (as defined below) from continuing during these chapter 11 cases.

2.  The Debtors set the PI Motions for hearing at the second day hearing, and set an objection deadline of October 18, just a week after selection of Committee counsel, and less than three business days after the selection of a financial advisor. The Debtors declined to agree to the Committee's timely request for a reasonable adjournment of the hearing on the PI Motions until the day before this objection was due, when they sought cooperation in seeking the adjournment of a pending venue motion as a trade.

3.  The recently-appointed Committee and its advisors are charged with ensuring that the Debtors' actions, and the relief they seek, inure to the benefit of all of their unsecured creditors, who are the only creditors in these proceedings. The Committee takes its fiduciary obligations seriously. The Committee cannot, in the absence of a reasonable period to consider with the benefit of discovery the allegations in the PI Motions and their supporting documents, assume that the Debtors' judgment in seeking extended stay and injunctive relief is in the best interests of these bankruptcy estates. Nor do the Debtors' self-serving and conclusory assertions convince the Committee that the requested relief is appropriate here. Having elected *not* to include their non-debtor affiliates within this bankruptcy, the Debtors' untested assertion that the continuation of litigation against non-debtors would harm these estates is not a sufficient basis for extending

significant bankruptcy protections to non-debtors whose actions are otherwise not subject to the supervision of this Court.

4.      Moreover, the Debtors have failed to comply with Rule 7001-1(a) of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), which governs any deviation of the rules governing adversary proceedings.

5.      Thus, in the absence of an adjournment and a reasonable briefing and discovery schedule in advance of a hearing on the PI Motions, the Committee objects to the relief sought in the PI Motions.

## BACKGROUND

6.      On September 19, 2022 (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

7.      Prior to the Petition Date, the Debtors, together with certain non-debtor affiliates, were named as defendants in lawsuits in multiple state and federal courts that are at various stages, ranging from initial pleadings to the post-judgment appellate phase.

8.      In addition to filing their petitions and motions seeking first-day relief, on the Petition Date, the Debtors commenced three adversary proceedings, *Mariner Health Central, Inc. et al. v. Arzeta, et al.*, Adv. No. 22-50418 (the "Covered Actions Adversary"),[2] *Mariner Health Central, et al. v. United States of America ex rel. Integra Med Analytics LLC*, Adv. No. 22-50419 (the "Integra Action Adversary"), and *Mariner Health Central, Inc., et al. v. People of the State of California*, Adv. No. 22-50420 (the "PSC Action Adversary" and, collectively with the Covered Actions Adversary and the Integra Action Adversary, the "Adversary Proceedings") by filing

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the *Declaration of Lawrence Perkins in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 12] (the "Perkins Declaration").

complaints (each, a "Complaint" and collectively, the "Complaints") seeking injunctive relief, and, in the Covered Actions Adversary and the Integra Action Adversary, declaratory relief extending the protection of the automatic stay to other defendants, all of which are individuals or entities that are affiliates of the Debtors (the "Non-Debtor Affiliates") and to enjoin numerous plaintiffs, many of whom are current or former residents of the Debtors' skilled nursing facilities, from prosecuting state court actions to recover damages from the Debtors' many affiliates and insurers.

9. On October 4, 2022, the Debtors filed the PI Motion in these cases and in each of the respective Adversary Proceedings, similarly seeking to extend the protection of the automatic stay and to enjoin the continuation of all pending state and federal court actions for the benefit of their Non-Debtor Affiliates. *See* D.I. 71, Adv. Pro. 22-50419 D.I. 3; D.I. 73, Adv. Pro. 22-50418 D.I. 3; D.I. 75, Adv. Pro. 22-50420 D.I. 3. Each of the PI Motions is accompanied by a Declaration from the Director of Legal Affairs of Debtor Mariner Health Central, Inc., Kristy Owen, asserting facts in support of the PI Motions.[3]

10. On October 5, 2022, certain individuals, each of whom is party to litigation pending against one or more of the Debtors, filed the *Motion to Transfer Venue of Bankruptcy Cases to the United States Bankruptcy Court for the Northern District of California Oakland Division* [D.I. 76] (the "Venue Motion"). On October 6, 2022, the State of California filed its *Joinder by the State of California in Support of the Motion of the Ledesma Action Plaintiffs to Transfer Venue of*

---

[3] *See Declaration of Kristy Owen in Support of Motion of the Debtors for an Order Granting Injunctive Relief and Enjoining Prosecution of the Integra Action Against Non-Debtor Affiliates* [D.I. 71, Adv. Pro. 22-50419 D.I. 4], *Declaration of Kristy Owen in Support of Motion of the Debtors for an Order Granting Injunctive Relief and Enjoining Prosecution of the Covered Actions Against Non-Debtor Affiliates* [D.I. 73, Adv. Pro. 22-50418 D.I. 4], and *Declaration of Kristy Owen in Support of Motion of the Debtors for an Order Granting Injunctive Relief and Enjoining Prosecution of the PSC Action Against Non-Debtor Affiliates* [D.I. 75, Adv. Pro. 22-50420 D.I. 4] (collectively, the "Owen Declarations").

25876939-v1

*Affiliated Chapter 11 Bankruptcy Case to the United States Bankruptcy Court for the Northern District of California* [D.I. 80].

11. On October 7, 2022, the Office of the United States Trustee (the "U.S. Trustee") appointed the Committee, which comprises seven members: (i) James Cearly Jr., by and through his Guardian *ad litem*, Sandra Cearly; (ii) Lisa Cabrera, Individually, as Successor in Interest of Louie Sira and as Personal Representative of the Estate of Louie Sira; (iii) Nancy Sanchez, as Successor in Interest and on behalf of the Estate of Jose Sanchez; (iv) Ronald Berinstein as Power of Attorney for Margo L.; (v) Scott Cook; (vi) Integra Med Analytics, LLC; and (vii) Skypower Secure Solutions, Inc. *See Notice of Appointment of Committee of Unsecured Creditors* [D.I. 83]. Six of the members of the Committee are defendants in the Adversary Proceedings.

12. The Committee selected proposed counsel on October 11, 2022 and selected a financial advisor on October 14, 2022.

13. The Debtors declined the Committee's request to extend the period to respond to or to adjourn the PI Motions pending discovery. On October 17, 2022, the Committee filed in both the main case and in each of the Adversary Proceedings its Motion to Continue the Hearing on the PI Motions, which seeks to adjourn the PI Motions until a period following the determination of the Venue Motion, and any joinders thereto, and until such time as the Committee and any other party in interest has the opportunity to take discovery in connection with the relief requested in the PI Motions, or, at a minimum, the date at which the initial status conference is scheduled to be heard in the Adversary Proceedings.

## JURISDICTION

14. This Court has jurisdiction over the Objection pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. 157(b). The statutory predicates for the

relief sought herein are Section 105 of Title 11 of the United States Code (the "Bankruptcy Code") and Federal Rules of Bankruptcy Procedure 9006, 9013, and 9014 (the "Bankruptcy Rules"), and Local Rule 7001-1(a).

## ARGUMENT

**I.**     ***The Debtors Have Not Articulated a Basis to Extend the Automatic Stay to Non-Debtors***

15.    Both the Covered Actions Stay Motion and the Integra Stay Motion seek an extension of the protections of the automatic stay.[4]

16. Section 362(a) of the Bankruptcy Code provides:

> Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, . . . operates as a stay, applicable to all entities, of –
>
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding *against the debtor* that was or could have been commenced before the commencement of the case under this title, or to recover a claim *against the debtor* that arose before the commencement of the case under this title;
>
> (2) the enforcement, *against the debtor or against property of the estate*, of a judgment obtained before the commencement of the case under this title; . . . .

11 U.S.C. § 362(a) (emphasis added).

17.    By its terms, the automatic stay applies only to debtors. The Debtor bears the burden of proving by a preponderance standard that the automatic stay should be extended to third party entities. *In re Ream Properties, LLC*, No. 1:15-BK-02980 MDF, 2017 WL 122985, at *2

---

[4] Given the nature of the action, the Debtors have not sought relief under section 362 with respect to the PSC Action. They have, however, reserved rights with respect thereto. PSC Stay Motion at ¶ 31. The Committee, in turn, reserves rights in the event the issue of the applicability of the stay to the PSC Action (and any extension thereof) is at any time before this Court.

25876939-v1

(Bankr. M.D. Pa. Jan. 9, 2017); *In re Aearo Techs. LLC*, 642 B.R. 891, 911 (Bankr. S.D. Ind. 2022).

18. Any extension of the stay requires a showing of "unusual circumstances[.]" *McCartney v. Integra Nat. Bank N.*, 106 F.3d 506, 510 (3d Cir. 1997) (quoting *A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d 994, 999 (4th Cir.), *cert. denied,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986)). That's appropriate when considering the benefit to non-debtors of being covered by the automatic stay without being bound by the corresponding burdens that accompany being a debtor in possession such as periodic reporting – including with respect to use of cash – and prohibitions of actions outside of the ordinary course of business.

19. The Third Circuit has found two primarily examples of such unusual circumstance. First, "where 'there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.'" *Id*. (quoting *Robins*, 788 F.2d at 999). Second, "where stay protection is essential to the debtor's efforts of reorganization." *Id*. (citing *In re Lazarus Burman Associates*, 161 B.R. 891, 899–900 (Bankr.E.D.N.Y.1993).

20. The Debtors have not evidenced either circumstance.

A. <u>The Debtors Have Not Shown an Identity of Interest Among the Debtors and the Non-Debtor Affiliates</u>

21. Despite allegations to the contrary, the Debtors have not proven that the multiple defendants in the various pending cases are effectively interchangeable.

22. <u>Covered Actions</u>: Debtors, citing a couple of examples attached to the Own Declaration, assert that, with respect to the Covered Actions, "there is an identity of interest between the Debtors and the Non-Debtor Affiliates . . . such that allowing the [continuation of the

8

Covered Actions] against the Non-Debtors Affiliates is tantamount to allowing its continuation against the Debtors." Covered Actions Stay Motion at 12.  But the Debtors have not provided each of the relevant complaints, or identified with specificity the asserted allegations in each of the Covered Actions.  Rather, the Debtors have lumped together the 18 separate Covered Actions, which they acknowledge contain disparate allegations ranging from employee wage class action claims to wrongful death.

23. The generalized language the Debtors rely on, and the couple of discrete examples, cannot be sufficient to identify an identity of interest among the Debtors. *In re W.R. Grace & Co.*, 591 F.3d 164, 172-73 (3d Cir. 2009 (citing *Federal-Mogul*, 300 F.3d 368, 382 (3d Cir. 2002) and *In re Combustion Eng'g, Inc.,* 391 F.3d 190, 232 (3d Cir. 2004))

24. <u>Integra Action and PSC Action.</u>  Debtors assert that, with respect to the Integra Action, "the costly and time-intensive burden to respond to discovery, oversee outside counsel and manage the defense of the Non-Debtor Affiliates would inevitably fall heavily on Mariner Central personnel."  *See*, Integra Action PI Motion at ¶ 28, PSC Action PI Motion at ¶ 21.  While employees of Mariner Central may be necessary in connection with the Integra Action and PSC Action, the Debtors' contentions that their services are immediately necessary are currently not supported.  By the Debtors' own admission, both the Integra Action and PSC Action are in their very early initial stages, with initial disclosures not even having been exchanged in the Integra Action, and no answer having been filed in the PSC Action.  *See*, Integra Action PI Motion at ¶ 22, PSC Action PI Motion at ¶ 14.  At this time, the Debtors' assertions that the continued litigation against non-debtors will cause irreparable harm to the Debtors is unfounded.  To the extent those assertions prove true at a later date, the Debtors can seek appropriate remedies at this time.  At this juncture, granting such extraordinary relief is not appropriate.

25. <u>Again, the Debtors' generalized statements are not sufficient to show irreparable harm to the Debtors' estates.</u> To impose an injunction based on purported harms far in the future would cut against a large body of case law and the Third Circuit's instruction that preliminary injunctions should be granted only in limited circumstances. See 11A Charles Alan Wright & Arthur R. Miller, Federal Practice And Procedure § 2948.1 Grounds for Granting or Denying a Preliminary Injunction—Irreparable Harm (3d ed.) (cited with approval in *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 129 S. Ct. 365, 375, 172 L. Ed. 2d 249 (2008)) ("[A] preliminary injunction will not be issued simply to prevent the possibility of some remote future injury."); *Lane v. New Jersey*, 725 F. App'x 185, 187 (3d Cir. 2018).

26. <u>Asserted Indemnity Obligation.</u> The Debtors state that Mariner Central has indemnification obligations with respect to each of the Operators. The Debtors have attached only one such exemplar Support Agreement that contains an indemnification provision. The Committee needs to review each individual Support Agreement to determine if, in fact, each Support Agreement contains such an indemnification provision and not rely on a single form with respect to over 40 non-debtors. The Committee also needs to review each of the Operators' and Mariner Central's governance documents to determine that such a requirement exists. Finally, the applicability of the indemnification provision to the allegations set forth in each complaint – again, only with respect to the Covered Actions, which have not been made available – is far from certain. Indeed, the Debtors have failed to note the indemnity provision in the exemplar Support Agreement running from the operator to Mariner Health Central. See Ex. A to each of the Owen Declarations. It is premature to assert a potential indemnity as a basis to extend a stay to a potential indemnitee, particularly when that entity may in fact be the indemnitor.

  B. <u>The Debtors Have Not Shown That Stay Relief is Essential to the Debtors' Reorganization</u>

  27. It is not clear that the requested relief is "essential" to the Debtors' reorganization; there is no evidence that any of the underlying litigation that is subject to the Adversary Proceedings are moving at a speed that could result in determinations adverse to these estates. The Integra Action, for example, is still in early stages: the parties are discussing initial disclosures, but have not yet made them. The defendants in the PSC Action have not even filed an answer to the complaint. The procedural posture of the Covered Actions is not clear. Rather, the Debtors focus on the hardship to Mariner Health in the face of these chapter 11 cases. The Debtors, however, have a CRO that was hired precisely for the purposes of leading the Debtors through the chapter 11 process. It is not clear that discovery will impose an undue burden.

**II.** *The Debtors Have Failed to Show that Injunctive Relief is Appropriate Here*

  28. Preliminary injunctive relief is "an extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren,* 553 U.S. 674, 689-90 (2008). *See also Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (noting that a preliminary injunction is an "extraordinary remedy, which should be granted only in limited circumstances"); *Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharm. Co.,* 290 F.3d 578, 586 (3d Cir.2002) (quotation marks omitted).

  29. The party seeking such relief must make a "clear showing" of entitlement, *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008), which is governed by four elements:

> A [party] seeking a preliminary injunction must establish (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest.

*Id. See also Ferring Pharma.*, 765 F.3d at 210 (quoting *Winter,* 555 U.S. at 20). "The movant bears the burden of showing that these four factors weigh in favor of granting the injunction." *Ferring Pharma.*, 765 F.3d at 210.

30. Preliminary injunctions, such as the debtor is asking for, can only be granted based on specific factual findings, rather than untested allegations. *Nutrasweet Co. v. Vit-Mar Enterprises, Inc.*, 112 F.3d 689, 691 (3d Cir. 1997) ("The court declined to [convert a TRO to a Preliminary Injunction] in the absence of a unanimous agreement of counsel [] noting that no preliminary injunction record had been developed and observing: 'If I am going to grant a preliminary injunction, I have got to make specific findings of fact.'").

31. Since the Debtors' sole basis for their requested relief are the untested factual assertions in the PI Motions and the Owen Declarations, the Committee asserts that the Debtors have failed to demonstrate that there are exigent circumstances entitling the Debtors to the extraordinary relief requested in PI Motions. Accordingly, this Court should deny them. The Debtors have cited no imminent deadlines or potentially cataclysmic determination on the immediate horizon, with respect to the Covered Actions; rather, the Debtors have indicated that the Integra Action and the PSC Action are in the "initial discovery stage." *See,* Perkins Decl., ¶ 28. Indeed, the parties to the Integra Action have not yet exchanged initial disclosures (*see* Integra Stay Motion, ¶ 22), and the defendants in the PSC Action have not yet even responded to the initial complaint. PSC Stay Motion, ¶ 14.

32. The Debtors also describe the burden on the Debtors, particularly Mariner Health, in managing this litigation going forward, and the potential distraction from the Debtors' reorganization efforts. As noted above, the Debtors have retained a CRO that specializes in leading distressed companies through the bankruptcy process; addressing litigation appears to be fairly

25876939-v1

ordinary course for these Debtors, and it is not clear that they will be distracted from those efforts. *See* Perkins Decl., ¶¶ 5, 23.

33. The Debtors' insurance picture also requires clarification, as it is unclear what, if any insurance remains, and, if so, whether it is shared among the Debtors and their non-debtor affiliates  The PI Motions suggest that available insurance coverage is subject to depletion, while indicating elsewhere that the insurance coverage has either been exhausted or is insufficient to cover the costs of litigation.  *See*, Covered Action PI Motion at ¶¶ 34, 43; Integra PI Motion at ¶¶ 3, 47; PSC PI Motion at ¶¶ 42, 47.

34. The absence of imminent irreparable harm is reason enough to deny the injunctive relief.  "Absent a showing of irreparable harm, a plaintiff is not entitled to injunctive relief, even if the other three elements are found." *Ferring Pharms., Inc.*, 765 F.3d at 219 (citing *NutraSweet,* 176 F.3d at 153); *In re Ronald Perlstein Enterprises, Inc.*, 70 B.R. 1005, 1008 (Bankr. E.D. Pa. 1987) (the automatic stay does not extend to third-parties unless the movant "established that to allow the action to proceed against [the third party] *would cause irreparable harm to the Debtor's estate*, impair a successful reorganization, result in little harm to the opposing party, and serve the public interest.") (emphasis added).  Accordingly, the PI Motions should be denied.

35. That said, the Committee believes that the Debtors also fail to satisfy the remaining prongs of the test articulated in *Winter*: (i) that they are likely to succeed on the merits, (ii) that the balance of equities tips in their favor, or (iii) that broad injunctive relief is in the public interest. *See Winter*, 55 U.S. at 22.

36. The Debtors recite the same parade of horribles in asserting that a balance of the equities favors them, from preclusive rulings that may or may not come to pass; to the contingent, but unknown, indemnity obligations; to the depletion of insurance (which may already be

exhausted); to the alleged immense burden of responding to discovery and the supposed diversion of management, which includes a Chief Restructuring Officer with a full staff available to focus on restructuring efforts. Against this, the Debtors assert that the harm to the various plaintiffs is de minimis, because the cases are in the very early stages  If the cases are in early stages, then this bankruptcy – which the Debtors have stated they intend to keep as short as possible – should not be harmed by the few interim actions that may occur during the pendency of these proceedings. The Debtors' positions seem to be inconsistent, and they need to provide evidence, rather than mere allegations.

37.     Similarly, the Debtors assert that injunctive relief is in the public interest where it will promote a successful reorganization.[5] There is no evidence that an injunction here will do so. Nor is there evidence that the Debtors, or another entity, will not continue to provide care to their patients. And, the Debtors ignore the strong countervailing policy of allowing plaintiffs, where possible, to have their day in court. *See*, *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846 (1999); *Care One Mgmt., LLC v. United Healthcare Workers East*, 22 F.4th 128 (3d Cir. 2021).

38.     As discussed above, the Debtors ask this Court to enter extraordinary relief without the benefit of any investigation by other parties to these proceedings. By short-circuiting the evidentiary process, the Debtors doom their own motions, as they are seeking relief on an incomplete record. The Debtors have failed to prove the exigent circumstances that are required for an extension of the automatic stay or the provision of injunctive relief, and the PI Motions should be denied.

**III.     *The Debtors Have Failed to Comply with Local Rule 7001-1(a).***

---

[5] *See*, Covered Actions PI Motion at ¶ 57, PSC PI Motion at ¶ 50, Integra PI Motion at ¶ 59. Indicating that each of the actions is in their very early stages.

25876939-v1

39. Local Rule 7001-1(a) set forth the circumstances under which a party may deviate from the rules governing adversary proceedings. Local Rule 7001-1(a) provides:

(a) Deviation From Rules Governing Adversary Proceedings.

> (i) Any party seeking relief that deviates in any manner from, or proposes additional obligations or procedures set forth in, the Federal Rules of Civil Procedure, the Fed. R. of Bankr. P., the District Court Rules, or the Local Rules governing Adversary Proceedings (the "Rules Governing Adversary Proceedings"), except a motion limited to a request for additional time to affect service of process under the applicable Rules, shall file a motion identifying with specificity the following: (A) Each instance in which the relief sought by and through such motion deviates from, or seeks procedures or obligations in addition to, any of the Rules Governing Adversary Proceedings; and (B) The good faith reason(s) the movant seeks to deviate from, or seeks procedures or obligations in addition to, such Rules Governing Adversary Proceedings.
>
> (ii) Any motion for relief brought pursuant to this Local Rule by the party initiating an adversary proceeding shall be served on all parties to the adversary proceeding in accordance with the service requirements of these Local Rules and the Federal Rules of Bankruptcy Procedure, and shall not include an objection deadline earlier than the date by which the party is required to answer, move or otherwise respond to the complaint.
>
> (iii) Any motion brought pursuant to this Local Rule shall be scheduled to be heard by the Court no earlier than the initial scheduling conference for the affected adversary proceeding.

Local Rule 7001-1(a).

40. The Debtors have failed to satisfy *any* of the requirements of Local Rule 7001-1(a). They have failed to articulate how the relief sought in the PI Motions deviate from the Rules Governing Adversary Proceedings, let alone the good faith reason(s) why they seek to deviate from those rules. Further, the objection deadline set by the Debtors is well in advance of the date by which any of the defendants to the Adversary Proceedings are required to answer or otherwise move or respond to the complaints. Finally, the Debtors have set the PI Motions for a date clearly

15

in advance of any initial scheduling conference in the Adversary Proceedings, for which *no* date has been set.   For these reasons alone, the PI Motions should be denied.

## RESERVATION OF RIGHTS

The Committee expressly reserves all rights with respect to challenging the validity, propriety, jurisdiction and venue of this chapter 11 cases, including without limitation seeking to dismiss the chapter 11 cases pursuant 11 U.S.C. § 1112 and seeking to transfer the chapter 11 case pursuant to 28 U.S.C. §§ 1406, 1408 and 11 U.S.C. § 105.

**WHEREFORE**, the Committee respectfully requests that the Court (i) deny the PI Motions, and (ii) enter such other relief as the Court believes is reasonable and appropriate.

Respectfully submitted,

Dated:  October 18, 2022       **ROBINSON & COLE LLP**
Wilmington, Delaware

*/s/ Jamie L Edmonson*
Natalie D. Ramsey (No. 5378)
Jamie L. Edmonson (No. 4247)
1201 North Market Street, Suite 1406
Wilmington, Delaware  19801
Telephone:  (302) 516-1700
Facsimile:  (302) 516-1699
nramsey@rc.com
jedmonson@rc.com

and

Rachel Jaffe Mauceri (*pro hac vice*)
1650 Market Street, Suite 3030
Philadelphia, Pennsylvania  19103
Telephone:  (215) 398-0556
 rmauceri@rc.com

*Proposed Counsel to the Official Committee of Unsecured Creditors of Mariner Health Central, et al.*